Argued and submitted August 28, 1986, affirmed May 27, reconsideration denied
July 17, petition for review allowed August 24, 1987 (304 Or 55)
See later issue Oregon Reports

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL DAVID LISSY,
*Appellant.*

(10-84-08136; CA A35041)

737 P2d 617

Stephen J. Williams, Deputy Public Defender, Salem,

argued the cause for appellant. On the brief were Wm. Timothy Lyons and Stephen R. Kelly, Oregon City.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction for aggravated murder, assigning error to the trial court's denial of his motion to suppress certain recorded conversations between him and others and the recorded statements of a co-conspirator (Wilson), and to the admission of the same statements of Wilson as admissions against penal interest. We affirm.

Defendant's wife, Kathryn Martini-Lissy, was found dead in a room at the Valley River Inn in Eugene on June 6, 1984. She had been strangled during the previous evening. Her body had several small abrasions, and there was evidence that she had engaged in, or was forced to engage in, sexual intercourse. Her room showed no sign that her murderer had used force to gain entry. Her wallet was missing and there was no money in the room.

As the investigation of the murder proceeded, police suspicion began to focus on defendant. At trial, several persons testified that defendant had approached them and asked if they could help him find a "hit man." Molly Griggs testified that defendant had told her that he wanted a woman strangled and raped. Later, she read a newspaper account of the killing and immediately suspected defendant. She contacted the police and agreed to help them in their investigation. At the request of the police, she made three telephone calls to defendant, which were recorded by the police with her consent. In those calls, Griggs told defendant that she suspected that he was involved in the murder and attempted to get money from him for the purpose of leaving town. Ultimately, defendant gave her money.

Tina LaPlante testified that defendant told her that he wanted a woman raped and murdered and offered her $500 if she could find a hit man. LaPlante contacted Dave Wilson, who told her that he was willing to do the job. She arranged a meeting between the two men. Defendant told LaPlante that Wilson would commit the murder. After the murder, LaPlante agreed to help the police in return for immunity from prosecution. She made two telephone calls to defendant, which the police recorded with her consent. On October 8, 1984, she and defendant discussed the grand jury inquiry into the murder, as well as a scheme whereby Wilson would take all of the blame for the murder in exchange for $25,000, which was to come

from a life insurance policy on the victim under which defendant was the beneficiary. On October 12, the police recorded another telephone conversation between LaPlante and defendant, during which they discussed Wilson's arrest and expressed the hope that Wilson would take full blame for the murder.

On October 11, before Wilson's arrest, LaPlante agreed to carry a concealed microphone and to engage Wilson in conversation regarding the murder. During that conversation, Wilson asked her to arrange a meeting with defendant so that they could go over the details of their plan to have Wilson take the blame for the murder. He also described the murder to her in graphic detail.

Defendant's motion to suppress the recorded conversations between defendant and Griggs, defendant and LaPlante and Wilson and LaPlante was denied, and the recordings were introduced in evidence at trial and played to the jury. Both Griggs and LaPlante testified for the state and described the circumstances of the conversations. Wilson invoked his right against self-incrimination and did not testify. Defendant contends on appeal that all of the recorded conversations should have been suppressed, because the telephone calls had been recorded without a court order and the recording of the conversation between LaPlante and Wilson was not properly authorized; he also contends that the admission of Wilson's statements contained in the recording of his conversation with LaPlante was not permissible under the Oregon Evidence Code and that their admission violated his right to confront the witnesses against him.

Defendant first argues that police recording of his conversations with Griggs and LaPlante and between LaPlante and Wilson violate ORS 133.724, a part of the state wiretap statutory scheme that is based on the federal Wiretap Act, Title III of the Omnibus Crime Control and Safe Streets Act, 18 USC §§ 2510 to 2520. *See State v. Pottle,* 296 Or 274, 677 P2d 1 (1984); *State v. Tucker,* 62 Or App 512, 518, 662 P2d 345, *rev den* 295 Or 618 (1983). The state statute regulates the "interception of wire or oral communications." ORS 133.724(1). " 'Intercept' means the aural acquisition, by listening or recording, of the contents of any wire or oral communication * * *." ORS 133.721(4). "Oral communication" means

"any oral communication, other than a wire communication, uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." ORS 133.721(6).

On its face, ORS 133.724 and its accompanying definitions, ORS 133.721, do not exempt situations where one party to a conversation consents to its being recorded. The federal statute does contain such an exemption. 18 USC 2511(2)(c). Defendant does not contend that the federal statute is unconstitutional. Neither does he challenge the constitutionality of the state statutory scheme if it is interpreted to include the same exemption for obtaining communications or conversations when one of the participants consents. The Oregon Supreme Court has held that there is no "interception" under ORS 133.724 when the recording is made by a party to the conversation. *State v. Underwood,* 293 Or 389, 392, 648 P2d 847 (1982). Defendant, however, contends that *Underwood* does not control here, because a participant did not record the conversations personally. The ultimate question is whether the legislature intended to forbid the recording of conversations by a non-participant with the consent of one of the participants, unless authorized by a court order.

The history of Oregon's statutory regulation of electronic surveillance indicates that it did not. The legislature first protected telecommunications from unrestrained surveillance in 1955. Or Laws 1955, ch 675 (later codified as ORS 165.540 and ORS 141.710 to ORS 141.740; in 1973, ORS 141.720 to ORS 141.740 were renumbered as ORS 133.723 to ORS 133.727, the predecessors of the current statutory scheme). The original act prohibited the obtaining of any part of a communication without a court order pursuant to section 3 of the act, with certain exceptions, and provided criminal penalties for a violation. One exception was for a non-participant who obtains the contents of a telecommunication when "consent is given by at least one participant." Or Laws 1955, ch 675, § 2(a) (later codified as ORS 165.540(1)(a)). A violation of that section was punishable by fine and imprisonment.

In 1979, the legislature revised the statutory scheme by enacting Or Laws 1979, ch 716, § 15(2) of which (*former* ORS 133.992(2)) provided:

"Except as provided in section 4 of this 1979 Act or as

provided in paragraph (a) of subsection (2) of ORS 165.540, any person who wilfully intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept any wire or oral communication where such person is not a party to the communication and where none of the parties to the communication has given prior consent to the interception, is guilty of a Class C felony."

Under that law, it is reasonably clear that recording any wire or oral communication with the consent of one of the participants did not violate the act. During the same session, ORS 165.540 was amended in some respects, Or Laws 1979, ch 744, § 9, but subsection 1(a) remained unchanged. As a result, there was a duplication of that provision: ORS 133.992(2) and ORS 165.540(1)(a). In 1983, ORS 133.992 was amended, Or Laws 1983, ch 824, § 2, by deleting subsection 2 quoted above. ORS 165.540(1)(a) was left alone, but Oregon Laws 1983, chapter 824, section 3, containing almost identical language to that deleted from ORS 133.992 and to that which was left intact in ORS 165.540(1)(a) was enacted. Section 3 is codified as ORS 165.543, with a note that the legislature did not specify where it belonged in ORS. From a reading of Oregon Laws 1983, chapter 824, it appears to us that it was intended to be a part of ORS chapter 133.

■ Although it is not completely clear, we conclude that the legislature did not intend ORS 133.724 to prohibit the police from recording a telephone conversation when one participant has consented, which is consistent with the federal act. Defendant's motion to suppress the recorded telephone conversations was properly denied.

■ Defendant also contends that the statements of Wilson that were made in his conversation with LaPlante and recorded by her should have been suppressed, because the court order allowing the recording of that conversation was obtained under ORS 133.726.[1] That statute requires a court

---

[1] ORS 133.726 provides:

(1) An ex parte order for the obtaining of any conversation in any county of this state under ORS 165.540(5)(a) may be issued by any judge as defined in ORS 133.525 upon written application made upon oath or affirmation of the district attorney for the county in which the order is sought or upon the oath or affirmation of any peace officer. The application shall include:

"(a) The name of the applicant and the applicant's authority to make the

order "for the obtaining of any conversation * * * under ORS 165.540(5)(a) * * *." It is not clear how a "conversation" under that statute differs from an "oral communication" under ORS

---

application;

"(b) A statement demonstrating that there is reasonable cause to believe that a person whose conversation is to be obtained is engaged in committing or has committed a particular felony and that the obtaining of the conversation will yield evidence thereof; and

"(c) The identity of the person, if known, suspected of committing the crime and whose conversation is to be obtained.

"(2) The judge may require the applicant to furnish further testimony or documentary evidence in support of the application.

"(3) Upon examination of the application and evidence, the judge may enter an ex parte order, as requested or as modified, authorizing or approving obtaining of conversations within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a) There is reasonable cause to believe that a person is engaged in committing or has committed a particular felony; and

"(b) There is reasonable cause to believe that conversations to be obtained will contain evidence concerning that crime.

"(4) An order authorizing or approving the obtaining of conversations under ORS 165.540(5)(a) shall specify:

"(a) The identity of the person, if known, whose conversation is to be obtained;

"(b) A statement of the particular crime to which the conversation is expected to relate;

"(c) The agency authorized under the order to obtain the conversation;

"(d) The name and office of the applicant and the signature and title of the issuing judge; and

"(e) A period of time after which the order shall expire."

ORS 165.540 provides, in pertinent part:

"(1) Except as otherwise provided in ORS 133.724 or subsections (2) to (6) of this section, no person shall:

"(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained.

"* * * * *

"(5)(a) The prohibitions in paragraph (c) of subsection (1) of this section do not apply to a law enforcement officer who uses a listening or recording device, machine or apparatus pursuant to a court order issued under ORS 133.726 to obtain a conversation between the officer or someone under direct supervision of the officer and a person whom the officer has reasonable cause to believe has committed, or is engaged in committing, a felony, so long as any officer who records a conversation does not intentionally fail to record and preserve the conversation in its entirety. However, the court order shall not be necessary under this paragraph if exigent circumstances make it unreasonable to obtain the order."

133.724,[2] which imposes more stringent requirements on the obtaining of a court order and more conditions that must be a

[2] ORS 133.724 provides:

"(1) An ex parte order for the interception of wire or oral communications may be issued by any circuit court judge upon written application made upon oath or affirmation of the individual who is the district attorney for the county in which the order is sought. The application shall include:

"(a) The name of the district attorney making the application and the authority of the district attorney to make the application;

"(b) The identity of the investigative or law enforcement officer making the application and the officer authorizing the application;

"(c) A statement demonstrating that there are reasonable grounds to believe that an individual is committing, has committed or is about to commit, a particular felony of murder, kidnapping, arson, robbery, bribery, extortion or other crime dangerous to life and punishable as a felony, or any conspiracy to commit any of the foregoing crimes;

"(d) A statement of the details, if known, of the particular crime alleged under paragraph (c) of this subsection;

"(e) A particular description of the nature and location of the facilities from which or the place where the wire or oral communication is to be intercepted, if known;

"(f) A particular description of the type of wire or oral communication sought to be intercepted;

"(g) The identity of the person, if known, suspected of committing the crime and whose wire or oral communications are to be intercepted;

"(h) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or are likely to be too dangerous;

"(i) A statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of wire or oral communication has been first obtained, a description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(j) A statement as to whether any prior application has been made to intercept wire or oral communications from the same person and, if such prior application exists, a statement of the current status of that application; and

"(k) Where the application is for the extension of an existing order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

"(2) The judge may require the applicant to furnish further testimony or documentary evidence in support of the application.

"(3) Upon examination of such application and evidence the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a) There is probable cause for belief that an individual is committing, has committed or is about to commit a particular crime described in paragraph (c) of subsection (1) of this section;

part of the order. *See* notes 1 and 2, *supra.* Defendant's argument is that the order should have complied with the requirements of ORS 133.724 in order to comply with the federal law. Even if he is correct in that contention, the federal law does

---

"(b) There is probable cause for belief that particular communications concerning that crime will be obtained through such interception;

"(c) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or are likely to be too dangerous; and

"(d) There is probable cause for belief that the facilities from which, or the place where, the wire or oral communications to be intercepted are being used, or are about to be used, in connection with the commission of that crime are leased to, listed in the name of, or commonly used by the individual suspected.

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify:

"(a) The identity of the person, if known, whose communications are to be intercepted;

"(b) The nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) A particular description of the type of communication sought to be intercepted, and a statement of the particular crime to which it relates;

"(d) The identity of the agency authorized to intercept the communications and of the person authorizing the application;

"(e) The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained; and

"(f) The name of the applicant, date of issuance, and the signature and title of the issuing judge.

"(5) No order entered pursuant to this section shall authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of authorization, nor in any event longer than 30 days. Extensions of any order may be granted, but only when application for an extension is made in accordance with paragraph (k) of subsection (1) of this section and the court makes the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purpose for which it is granted and in no event for longer than 30 days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception, and must terminate upon attainment of the authorized objective, or in any event in 30 days.

"(6) Whenever an order authorizing interception is entered pursuant to this section, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require."

not require a court order when one of the participants consents, and ORS 165.540(5)(a) provides a more limited exception, applicable here, to the requirement for a court order:

> "The prohibitions in paragraph (c) of subsection (1) of this section do not apply to a law enforcement officer who uses a listening or recording device, machine or apparatus pursuant to a court order issued under ORS 133.726 to obtain a conversation between the officer or someone under direct supervision of the officer and a person whom the officer has reasonable cause to believe has committed, or is engaged in committing, a felony, so long as any officer who records a conversation does not intentionally fail to record and preserve the conversation in its entirety. However, the court order shall not be necessary under this paragraph if exigent circumstances make it unreasonable to obtain the order."

Furthermore, we have concluded that ORS 133.724 does not prohibit the obtaining of a conversation when one of the participant's consents. Accordingly, the taped conversation between LaPlante and Wilson was not suppressible for the reasons argued by defendant.

Defendant also argues that, even if the taped conversation between LaPlante and Wilson was not suppressible, the statements that he made during that conversation were inadmissible, because they are hearsay (Wilson was not available for trial), and are not admissible under any exception to the hearsay rule; further, he contends that he was denied his right of confrontation by their admission in evidence.

The trial court ruled that part of Wilson's statements to LaPlante were admissible under OEC 801(4)(b)(E)[3] as a coconspirator's statement in furtherance of the conspiracy, and that the other parts were admissible under OEC 804(3)(c)

---

[3] OEC 801(4), as relevant, provides:

"A statement is not hearsay if:

"* * * * *

"(b) The statement is offered against a party and is:

"* * * * *

"(E) A statement by a conspirator of a party during the course and in furtherance of the conspiracy."

as statements against interest.[4] Because we conclude that all of the relevant statements in the conversation are admissible as statements against penal interest, we do not address whether the statements are also admissible under OEC 801(4)(b)(E).

Although Oregon did not recognize a statement against penal interest as an exception to the hearsay rule until the adoption of the evidence code in 1981, the Legislative Commentary to OEC 804(3)(c) makes it clear that Wilson's statements to LaPlante fall within the rule:

> "A statement admitting guilt and implicating another person, made while in custody, may well spring from a desire to curry favor with the authorities and hence fail to qualify as being against the declarant's interest * * *. On the other hand, the same words spoken under different circumstances, e.g., to an acquaintance, would have no difficulty in qualifying."

 Wilson was unavailable to testify, because he had invoked his right against self-incrimination. OEC 804(1)(a). The entire conversation is replete with Wilson's admissions of criminal involvement: a detailed description of how he murdered the victim, the attempt to avoid detection, the method by which defendant was to pay him for taking the blame and a planned meeting between him and defendant.[5] A reasonable person would not have made those statements, unless they were true. On its face, 804(3)(c) does not require corroborating evidence for statements that inculpate the accused, although

---

[4] OEC 804(3) provides:

"The following are not excluded by section 63 (Rule 802) of this Act if the declarant is unavailable as a witness:

"* * * * *

"(c) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

[5] In the course of his eight minute conversation with LaPlante, Wilson admitted committing acts that, if true, would be sufficient for charging him with aggravated murder, ORS 163.095, robbery in the first degree, ORS 164.415, tampering with physical evidence, ORS 162.295, obstructing governmental or judicial administration, ORS 162.235, and, possibly, perjury ORS 162.065.

it specifically requires corroboration for exculpatory statements. Because sufficient corroborating evidence exists in this case, we need not decide whether they would be necessary when the evidence is offered to inculpate the accused.

Although Wilson's statements are admissible under 804(3)(c), we also must consider whether defendant's rights of confrontation under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution have been violated.[6] In interpreting Article I, section 11, independently of the Sixth Amendment, the Oregon Supreme Court has adopted the reasoning of the United States Supreme Court in examining confrontation issues. *State v. Campbell,* 299 Or 633, 648, 705 P2d 694 (1985). The United States Supreme Court examined the relationship between the exceptions to the rule against hearsay and the Confrontation Clause in *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). It established a two-part test for determining whether the admission of an out-of-court statement by a witness who does not testify at trial violates the defendant's right of confrontation. First, the declarant must be unavailable; second, the out-of-court statements must have "adequate indicia of reliability." *Ohio v. Roberts, supra,* 448 US at 66; *State v. Campbell, supra,* 299 Or at 648. When Wilson asserted his right against self-incrimination, he became unavailable for defendant's trial, *State v. Farber,* 295 Or 199, 209, 666 P2d 821, *appeal dismissed* 464 US 987 (1983); therefore, the first test is satisfied.

With respect to the second test, when the statement falls within a firmly rooted hearsay exception, reliability may be inferred. If the statement does not fall within such an exception, the evidence will be excluded, unless there are "particularized guarantees of trustworthiness." *State v. Farber, supra,* 295 Or at 208. We conclude that Wilson's statements contained adequate guarantees of trustworthiness. In making that determination, we examine the circumstances

---

[6] Or Const, Art I, § 11, provides:

"In all criminal prosecutions, the accused shall have the right to * * * meet the witnesses face to face * * *."

US Const, Amend VI provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

surrounding the statements. The fact that they were preserved on tape corroborated that they were actually made. They were made when Wilson was not in custody. He thought that he was speaking to one who was, or at least had been, an accomplice. Physical evidence, including the autopsy report, corroborated Wilson's description of the murder. Defendant's telephone conversations with LaPlante corroborated the statements regarding the plan for Wilson to assume full blame for the murder in return for the payment of money. All of the statements damaging to defendant were against Wilson's penal interest and were accompanied by circumstances that guarantee trustworthiness. We hold that Wilson's statements to LaPlante were admissible under OEC 804(3)(c).

Affirmed.