Argued and submitted April 2, 1991, decision of the Court of Appeals and judgment of the circuit court affirmed June 17, 1993

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RICHARD ANDREW NIELSEN,
*Petitioner on Review.*

(CC C89-0964CR; CA A62544; SC S37614)

853 P2d 256

Laura Graser, Portland, argued the cause and filed the petition for petitioner on review.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review.

FADELEY, J.

Unis, J., dissented and filed an opinion in which Van Hoomissen, J., joined.

## FADELEY, J.

Defendant was convicted of forgery after a trial to the court. An out-of-court statement of defendant's accomplice, Shelly Rimer, was admitted in evidence under the exception stated by OEC 804(3)(c), which permits admission of hearsay statements that are against the penal interest of a declarant who is unavailable as a witness.[1] Defendant argues that the admission of Rimer's statement was erroneous, because:

(1) Rimer's statement did not meet the requirements of OEC 804(1)(e) and 804(3)(c);[2] or

(2) the admission of Rimer's statement violated defendant's confrontation rights under either or both Article I, section 11, of the Oregon Constitution,[3] and

---

[1] OEC 802 provides:

"Hearsay is not admissible except as provided in [OEC 801 to 806] or as otherwise provided by law."

OEC 804(3)(c) provides:

"The following are not excluded by [OEC 802] if the declarant is unavailable as a witness:

"* * * * *

"(c) A statement which was at the time of its making so far contrary to the declarant's * * * interest or so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Definitions for "statement" and "declarant" are provided in OEC 801 as follows:

"(1) A 'statement' is:

"(a) An oral or written assertion; or

"(b) Nonverbal conduct of a person, if intended as an assertion.

"(2) A 'declarant' is a person who makes a statement."

[2] OEC 804(1)(e) provides:

" 'Unavailability as a witness' includes situations in which the declarant:

"* * * * *

"(e) Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of an exception under paragraph (b), (c) or (d) of subsection (3) of this section, the declarant's attendance or testimony) by process or other reasonable means."

[3] Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to * * * meet the witnesses face to face * * *."

the Sixth Amendment to the Constitution of the United States.[4]

The Court of Appeals affirmed without opinion. *State v. Nielsen*, 103 Or App 486, 798 P2d 269 (1990). We also affirm.

## FACTS

A Portland residence was burglarized. The victim's traveler's checks, keys, and personal identification were stolen. Rimer attempted to cash one of the stolen checks by posing as its owner at a store in Beaverton and forging the owner's signature on it. When a security guard tried to arrest her, Rimer fled from the store. Outside, she called out to defendant by his first name, "Richard." He approached her and said, "Baby, don't worry about it, it's okay." That exchange was overheard by police officers, who arrested both Rimer and defendant in the store's parking lot. Defendant was searched. He possessed the burglary victim's keys and personal property. Rimer also possessed some of the victim's identification.

After reading Rimer her *Miranda* rights, Officer Marley interviewed her at the place of arrest. At first, she denied being implicated in anything illegal but, when told by the officer that he did not believe her, confessed to forgery of checks that she had received from the burglary. The officer then recorded Rimer's statement on tape. The statement was made promptly following Rimer's arrest — not after transportation to a jail, protracted questioning, or as a part of any plea bargaining. Rimer was transported from the parking lot to the jail and later released from custody. She gave her parents' address and another Multnomah County address as places where she could be reached. When the date of defendant's trial on the forgery charge approached, the prosecutor attempted to serve a subpoena on Rimer to compel her attendance as a witness, but was unable to locate her, and she did not appear at defendant's trial.

---

[4] The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

During the trial, the arresting officer testified on direct examination:

"Q. [BY PROSECUTOR:] Officer Marley, what did Ms. Rimer tell you about where she had obtained the checks which you had taken her into custody for?

"A. [BY OFFICER MARLEY:] She stated on the previous day, which would have been the — she believed on the 27th, between 11:00 and 2:00, she rode with the Defendant to the Park Block area in Portland, where he committed a burglary.

"She said that he had been given a piece of paper by a mutual friend, indicating that this area in the park blocks was a good place to commit burglaries, and he should try it out.

"She said that she stayed in the car while he and another person went in and committed the burglary. When they came out they handed her all the stolen items, including this — all the items she had with her the night she was arrested, which included airline tickets, credit cards, all belonging to [the victim].

"* * * * *

"Q. She indicated that she knew when she drove to this location with the Defendant, that a burglary was going to be committed, is that correct?

"A. Yes.

"Q. Did she make any statements to you about possessing any other checks, in addition to the one that — ones that you seized from her person, or having passed any other checks belonging to [the victim], other than the ones you seized from her person?

"A. Yes.

"Q. What did she tell you about other checks she passed?

"A. She told me that they had cashed a $20 — or forged a $20 American Express traveler's check — I believe is the brand, that also belonged to [the victim], at [a store] in Portland.

"Q. Did she say who was with her when she passed that check?

"A. She said it happened right after the burglary, and that she had driven there in the car with the Defendant here.

They drove to that store, and then she took the — the checks and went in and committed the forgery while he waited outside.

"Q. Did she tell you how she arrived at the [store]?

"A. Yes, she did.

"Q. What did she tell you?

"A. She stated that Mr. Nielsen, the Defendant, had arranged transportation, so that they could come to the [store] * * *."

Defense counsel timely objected as follows:

"[DEFENSE COUNSEL]: Objection, your Honor, on several grounds. First of all, hearsay. I'll start with that.

"[PROSECUTOR]: Your Honor, I would submit that Ms. Rimer is an unavailable witness at this time. Knowledge of how she obtained the check, if she knew it was stolen when she obtained it, would certainly be a statement against interest, that would show knowledge and intent to defraud, which are necessary elements of proving Forgery. * * * [I]nformation about * * * how she obtained this check, is information that is against her penal interest, and should be admissible.

"THE COURT: [Defense counsel]?

"[DEFENSE COUNSEL]: Furthermore, your Honor, if I'm not allowed to have the chance to cross — cross-examine her — That testimony is crucial. I mean, if the officer's going to make those kinds of statements, and I can't cross-examine — there's no way my client could have a fair trial. And I just think to allow those kinds of statements to come in, when in essence the entire State's case rests on those statements — that that's just — that's — that just can't be overcome by what's gone on here.

"I also indicate — It's been indicated by the officer that this is a case of a person who appears to be around somewhere, just can't be found right now. There are other ways of going about this * * * — more effort being made, and so forth."

The trial court then ruled:

"I think that the case law has shown that two things need to be shown: One is unavailability, which we have. And I understand that there's some objection to that * * *.

"The second is that I believe I can still get — evidence would still be allowed in under [OEC] 804.3(c) if I find that the out-of-court statements were made in some adequate indicia of reliability.[5]

"And I am going to admit the statements because I think — a couple of things come out: One, when she exited the [store] the first thing she yelled out is 'Richard,' so she knew he was in the area; his statement, 'Baby, don't worry, it'll be okay.' Apparently, indicating that the — apparently, to me at least some admission that he knew something was wrong; in addition, with the search of his person, that other fruits of the burglary were found in his possession.

"And I think those things, together with the testimony that I've heard here, indicia of [reliability], that I'm going to allow the questions * * *."

Defense counsel then asked the court's permission to renew the objection, by entertaining a motion to strike, "after the Court's heard this officer's testimony, because by his own police report, we'll be able to show that he was able to get her to change her story." The court agreed to entertain such a motion. After the officer testified, defense counsel moved to strike the officer's testimony recounting the hearsay statement. At that time, counsel argued:

"[W]e've got this hearsay statement coming in, and by the own — officer's own testimony it was either false the first time, or I submit, she is — he may have intimidated her into telling a different story that would implicate [defendant].

"But either way, especially when I don't even get a chance to cross-examine her, that whole statement just cannot be given any consideration, or at least not the type of consideration to convict my client.

"* * * [T]he Court should strike that — that whole testimony regarding what Ms. Rimer said, and we can go from there."

The court denied the motion.

---

[5] The colloquy with the court included references to *State v. Lissy*, 85 Or App 484, 737 P2d 617, *aff'd* 304 Or 455, 747 P2d 345 (1987), thus making clear that defendant relied on, and that the trial court considered, constitutional confrontation claims. The trial court's reference to finding "adequate indicia of reliability" should, therefore, be understood as a ruling that, in the circumstances of this case, Rimer's statements against penal interest carried with them adequate guarantees of trustworthiness, notwithstanding Rimer's custody status.

## ANALYSIS OF DEFENDANT'S CLAIMS

Our analysis proceeds in three steps. First, we consider defendant's arguments under the pertinent statute or other state law; second, we analyze defendant's state constitutional claims; and, third, we examine defendant's federal constitutional claims. *State v. Esplin*, 314 Or 296, 300, 839 P2d 211 (1992).

### A. *Under the Statute, OEC 804(3)(c)*

### 1. *Unavailability*

Rimer's statement was hearsay, because it was offered to prove the truth of the matter asserted. OEC 801(3). It is to be excluded under OEC 802 unless it fits an exception. Under the against-penal-interest exception stated in OEC 804(3)(c), the statement was admissible only if the declarant was "unavailable as a witness." OEC 804(1)(e) defines "unavailability" for the purposes of OEC 804 to include, among other things, declarant's absence from the hearing. She was absent. But absence from the hearing qualifies as "unavailability" only if the proponent of the declarant's statement has attempted, "by process or other reasonable means," to secure the declarant's attendance or testimony and has been unsuccessful.

The declarant's unavailability is a preliminary question of fact for the trial court to decide under OEC 104(1). *State v. Pinnell*, 311 Or 98, 114-15, 806 P2d 110 (1991); *State v. Douglas*, 310 Or 438, 443, 800 P2d 288 (1990). In this case, the state, as the proponent, had the burden of proving to the trial court by a preponderance of the evidence that Rimer was unavailable. *See State v. Pinnell, supra*, 311 Or at 114 (discussing burden of proof). When the trial court rules on a preliminary question of fact under OEC 104(1), we view the record in the manner most consistent with the ruling, accepting reasonable inferences and reasonable credibility choices that the court could have made in support of its ruling. *State v. Carlson*, 311 Or 201, 214, 808 P2d 1002 (1991); *State v. Pinnell, supra*, 311 Or at 115.

The prosecutor established at defendant's trial that the following efforts had been made to locate Rimer: police attempted to subpoena Rimer at her parents' home and at the

second address that she had given to the arresting officer; they asked persons at those addresses for other leads and then tried to find Rimer at a third location that was suggested by residents at the second address; warrant checks, to see if Rimer had been arrested on any of several outstanding warrants against her, were conducted weekly through the police computer information system; and police made such a check on the morning of trial. There was no indication that police failed to follow up on any available lead concerning Rimer's whereabouts. There was sufficient evidence to support the trial court's finding of fact that Rimer was unavailable within the meaning of OEC 804(1)(e).

## 2. *Trustworthiness*

■ Defendant argues that Rimer's statement accusing defendant of criminal conduct are not accompanied by the required trustworthiness guarantee to make a statement against penal interest admissible. This is so, defendant argues, because (1) the statements were made while declarant was in police custody, and (2) the statements represent a change from her initial story, a change occurring after declarant was "intimidated" by the interrogating officer and while she was attempting to shift blame or potential punishment away from herself.[6]

Some authority supports the latter concern, at least in the abstract. The Commentary to OEC 804(3)(c) reflects defendant's concern with one declarant's statements that not only inculpate the declarant but also inculpate a separate defendant:

---

[6] Defendant concedes by his present argument that some portions of Rimer's statement are, as to Rimer, against her penal interest, *i.e.*, that some parts of her statement are "confessions, which do not implicate defendant." Defendant contends, however, that Rimer's statement may be broken into three parts, and that the portion of the statement inculpating defendant was not against the declarant's penal interest as required by OEC 804(3)(c). Although McCormick suggests severing inculpatory portions of a declaration against penal interest from exculpatory portions, 2 McCormick on Evidence 345, § 319 (4th ed 1992), we do not see that any part of Rimer's declaration was exculpatory of her or of defendant. The part concerning the burglary described her as a knowing, willing participant. She went to the scene knowing that a felony was intended; she received the fruits of the burglary immediately; and she attempted, by forgery, to convert them to money, all according to her statement. The parts concerning the two forgeries — parts that defendant asserts on appeal inculpate Rimer alone — not only inculpate Rimer, but also clearly inculpate defendant in the crime charged, forgery.

> "A statement admitting guilt and implicating another person, *made while in custody*, may well spring from a desire to curry favor with the authorities and hence fail to qualify as being against the declarant's interest." Kirkpatrick, Oregon Evidence 636 (2d ed 1989) (emphasis added).

■ This court previously has noted its concern over inculpatory statements made by persons in custody. *See State v. Farber*, 295 Or 199, 666 P2d 821 (defendant's confrontation rights not violated by admission of non-testifying co-conspirator's hearsay statements), *appeal dismissed* 464 US 987 (1983). The court contrasted the probable reliability of a statement made to a friend with statements "made in order to gain an advantage, as when a person in custody makes an admission as part of a plea bargain, or makes a statement after a crime is committed to lay the blame on someone else, or at least implicate him." 295 Or at 212. We recognize that *Farber* dealt with a different evidentiary exception than that which is involved in this case, but the possibility that the reliability of a statement will be affected by a declarant's custody status, noted in *Farber*, is also present in this case. Whether a declarant's against-penal-interest statement is uttered under circumstances such "that a reasonable person in the declarant's position" would not make the statement unless it is true or, instead, is uttered to curry favor with a listener is an issue for the trial judge to resolve. He did so here, finding indicia of reliability present.

Rimer incriminated herself and defendant after receiving a *Miranda* warning and did so promptly after her arrest, before transportation to jail, and without protracted police interrogation. Rimer's statement described her knowing participation in both the burglary and the subsequent illegal use of the proceeds of that crime. The statement admitted her equally culpable involvement, rather than trying to shift blame. It "so far tended," in the eyes of a reasonable person standing in her shoes, to subject her to criminal liability for both forgery and burglary that she normally would not have exposed herself to that liability unless she believed that her statement was true. We hold that there was sufficient evidence to support a finding that declarant would not have made the self-damaging declaration unless she believed it to be true and that there is no

substantive evidence that any countervailing motivation was in fact present as to Rimer's declaration here.

■ The last sentence of OEC 804(3)(c) provides that "[a] statement tending to expose the declarant to criminal liability *and offered to exculpate the accused* is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." (Emphasis added.) However, the preceding sentence of OEC 804(3)(c) — making admissible a statement that "so far tended to subject the declarant to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true" — contains no parallel requirement of corroboration for a statement tending to expose the declarant to criminal liability and offered to *inculpate* an accused. By clear and necessary implication, the text of the rule does not require circumstantial corroboration of the *truth* of an inculpatory statement that otherwise qualifies as a statement against penal interest.[7]

The dissent does not disagree with the court's methodology in this case, but bases its position on a pervasive *suspicion* that persons in police custody do not tell the truth when they make a statement that inculpates themselves and any other person. The dissent relies exclusively on some less-recent federal cases for that point.[8]

The dissent's citation directly (and also to a text) relying on *United States v. Riley*, 657 F2d 1377 (8th Cir 1981), seems misapplied to the claim that all statements made by a person in custody against penal interest are presumptively unreliable if they also inculpate another. In that case, the declarant *denied* participation in the federal crime

[7] *See Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981) (where legislature includes express provision in one statute, and omits such a provision in another related statute, it may be inferred that the omission is deliberate); *Rosentool v. Bonanza Oil and Mine Corp.*, 221 Or 520, 527, 352 P2d 138 (1960) (legislature would have placed the words "upon proof of a proper purpose" in the statute had it so intended, and this court is precluded from adding the words to the statute). Where a confrontation clause challenge is under consideration, the inquiry is whether the hearsay statement is itself shown to be reliable by circumstances surrounding its utterance, as our analysis, *post*, indicates.

[8] As applied by the dissent, that point is related only to inculpation concerning a burglary. But forgery was the sole charge on which defendant was tried and convicted.

with which the defendant was charged, while affirming the defendant's participation. Her admission against penal interest related only to a state crime of lesser potential penalty. Because the statement inculpating the defendant denied the declarant's participation in that crime (and therefore no penal interest guarantee could apply to it), it was held in *Riley* that admission against the defendant was reversible error. *Id.* at 1384-85. Citation to *United States v. Sarmiento-Perez*, 633 F2d 1092 (5th Cir 1981), is likewise unpersuasive because, in that case, the declarant was permitted to plead guilty to but one of the five counts on which he was indicted, entangling his inculpatory remarks with governmental leniency and an apparent plea bargain.

Moreover, the more recent federal cases do not support the dissent's interpretation of the against-penal-interest rule in cases where the inculpatory statement is uttered in custody. *See U.S. v. Vernor*, 902 F2d 1182, 1188 (5th Cir) ("There is nothing in the record that indicates that Fred was motivated by a desire to curry favor with his interrogators. There is no evidence that the police or FBI agents made any promise to Fred or that they gave him any reason to believe that it would help him if he inculpated his son, Gary."), *cert den* 498 US 922 (1990); *U.S. v. Gabay*, 923 F2d 1536, 1540 (11th Cir 1991) ("Yet, the very content of [the declarant's] statement repudiates any motive to shift blame or distort [the defendant's] degree of culpability.").

B. *Article I, Section 11 — Meet the Witnesses Face to Face.*

In *State v. Stevens*, 311 Or 119, 140-41, 806 P2d 92 (1991), this court stated the test to be followed in analyzing a claim under Article I, section 11, that admission of a hearsay statement violates a defendant's confrontation rights:

"In *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), this court adopted the reasoning of the Supreme Court of the United States to determine 'what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause.' The leading Supreme Court case in this area is *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), where the

Court established a two-part test to decide whether a defendant's Sixth Amendment confrontation rights have been satisfied when an out-of-court statement by one not testifying at trial is admitted. The Court held that the declarant must '[i]n the usual case' be unavailable, and the statement must have 'adequate indicia of reliability.' 448 US at 65-66. When the statement falls within a 'firmly rooted hearsay exception,' courts will deem it to be reliable. 448 US at 66. In the alternative, reliability may be supported by 'a showing of particularized guarantees of trustworthiness.' *Ibid.*"

■ The first question is whether the declarant was unavailable under Oregon's Confrontation Clause, Article I, section 11. The facts detailed above show that the state made a good-faith effort to obtain Rimer's testimony, but was unable to do so. That effort demonstrates one of the alternative conditions establishing unavailability of a declarant. *See State v. Stevens, supra*, 311 Or at 141 (a good-faith effort to obtain the witness' testimony, which effort is unsuccessful); OEC 804(1)(e) (unable to procure declarant's attendance by process or other reasonable means). Rimer was unavailable within the requirements of Article I, section 11.

■ With respect to the second component, indicia of reliability, we have not been cited to any authority indicating that a statement against penal interest falls within a "firmly rooted hearsay exception," but that is not determinative in this case, because "a showing of particularized guarantees of trustworthiness," *State v. Campbell, supra*, 299 Or at 648, is present here.

As noted above, the trial court expressly considered whether Rimer's statement had adequate indicia of reliability in the form of guarantees of trustworthiness and concluded that it did, notwithstanding the fact that she was then under arrest. The guarantee is in the fact that the statement is strongly against declarant's penal interest and no countervailing motivation to fabricate is shown to be in operation. Because its against-interest guarantee had not yet been affected by the circumstances of her arrest, custody, or any desire to curry favor, the evidence supports the trial court's conclusion that the statement was reliable. Rimer's first statement to police was an attempt to keep the focus of blame off defendant, not to shift it to him. There is no suggestion in

the record that the police obtained Rimer's statements, inculpating herself and defendant, by the use of any promise, such as a promise of leniency, or through intimidation. There is no evidence suggesting that Rimer was unaware of the possible consequences that she faced upon making the statement. *Miranda* warnings were given and rights thereunder waived before the statement was made. The statement was made promptly following arrest, not after transportation to a jail, protracted questioning, or as a part of any plea bargaining.

We decline to adopt a *per se* rule invalidating all hearsay "confessions" made in custody and, instead, examine the circumstances under which the inculpatory statement was made. There is no evidence that the trustworthiness guarantee for a statement against penal interest — that a reasonable person will not make a statement incriminating herself unless it is true — had eroded at the time that Rimer uttered her statement inculpating herself and defendant equally. Defendant was able to cross-examine on this point, to make a claim of potential unreliability of the statement because uttered in a custody setting, and to question the declarant's credibility based on her initial response being different than her "against-penal-interest" statement. Defendant had the opportunity to cross-examine Officer Marley to determine if the officer was able to report accurately what Rimer said.[9]

The admission of Rimer's statement pursuant to OEC 804(3)(c) did not violate Article I, section 11, of the Oregon Constitution.

### C. *Sixth Amendment*

#### 1. *Unavailability*

The Sixth Amendment Confrontation Clause does not automatically and universally require an "unavailability analysis" in order to determine whether out-of-court statements are admissible. *White v. Illinois*, 502 US ___, 112 S Ct 736, 116 L Ed 2d 848, 858 (1992) (firmly rooted hearsay exceptions for statements made for purposes of medical diagnosis and for excited utterances); *United State v. Inadi*, 475

---

[9] Although Rimer's statement had been taped, the recorded statement was not offered by either side.

US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986) (firmly rooted hearsay exception for co-conspirators statements). As a firmly rooted hearsay exception, a statement in furtherance of a conspiracy may be admitted against a co-conspirator "without" any independent inquiry into its reliability. *State v. Cornell*, 314 Or 673, 685, 842 P2d 394 (1992). Confrontation rights are, as to that sort of hearsay, satisfied without face-to-face cross-examination of the hearsay declarant.

■■ ■■ The Supreme Court of the United States, however, has not ruled on whether unavailability of the declarant is required for statements against penal interest that are inculpatory of a third person, nor has it considered whether that hearsay exception is, for federal confrontation clause purposes, firmly rooted. Assuming, as we do, that a showing of unavailability would be required for such out-of-court statements, such a showing was made in this case. Under *Ohio v. Roberts, supra*, 448 US at 74, the state must show that prosecutorial authorities made a good-faith effort to obtain the witness' presence at trial, a question of reasonableness. The facts outlined in the "Unavailability" section of this opinion, *ante*, show that the record supports the conclusion that the state made a good-faith attempt to secure Rimer's testimony.

### 2. *Indicia of Reliability*

Discussing hearsay evidence and the confrontation clause, 4 Louisell & Mueller, Federal Evidence 123, § 418 (1980), observes:

"Few tasks in criminal evidence are more perplexing than to describe the effect of the Confrontation Clause of the Sixth Amendment upon the hearsay doctrine. Signals from the Supreme Court point in different directions; the views of commentators differ, and while the subject is potentially as vast as the hearsay doctrine itself, benchmarks in the form of authoritative decisions are few and far between." (Footnotes omitted.)

Weinstein and Berger, Weinstein's Evidence Manual 14-16 to 14-18 (1987) comments:

"The confrontation clause of the sixth amendment provides 'that in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him.' Taken literally, this clause could mean that no

evidence falling within a hearsay exception may be admitted against an accused unless the declarant is available to testify, or that no extra-judicial statements may be admitted unless an opportunity for cross-examination has been afforded. At no time, however, has either personal presence of the witness or cross-examination been insisted upon as indispensable. At its narrowest, the provision could also mean only that the defendant has a constitutional right to cross-examine those witnesses who actually testify against him at trial, so that the confrontation clause and the hearsay rule are simultaneously satisfied when evidence is admitted pursuant to a hearsay exception, although the declarant does not testify. This theory, however, has been expressly rejected by the Supreme Court, which has on several occasions rejected the notion that the hearsay rule and the right to confrontation are fully congruent, although the Court acknowledged that both protect similar values.

"What then does the confrontation clause mean? As recently as 1986, the Supreme Court 'disclaimed any intention of proposing a general answer to the many difficult questions arising out of the relationship between the Confrontation Clause and hearsay.' Taken together, however, the latest Supreme Court pronouncements in *White v. Illinois*, [502 US _____, 112 S Ct 736, 116 L Ed 2d 848 (1992),] *United States v. Inadi*, [475 US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986),] *Bourjaily v. United States*, [483 US 171, 107 S Ct 2775, 97 L Ed 2d 144 (1987),] and *United States v. Owens*, [484 US 554, 108 S Ct 838, 98 L Ed 2d 951 (1988),] which are discussed below, suggest that the confrontation clause will not operate independently to exclude evidence permitted under the hearsay rules except in rare instances where the confrontation issue has placed the defendant at a severe disadvantage in challenging the apparent probative force of the hearsay declaration." (Footnotes omitted.)

At 17-20 and 21, the same author states:

"Statements against penal interest offered to inculpate the accused are particularly troublesome. * * * At the very least, a trial court should not admit an inculpatory statement until it has carefully scrutinized the circumstances in which declarant allegedly made the statement, and the relationship between the witness and declarant. In determining whether the statement is sufficiently reliable to admit, the court should consider such factors as the role of the declarant, whether he was in custody, the resolution of the charges pending against him, whether the declarant was being tried

jointly with the accused, and the significance of the declarant's testimony.

"The constitutional test for inculpatory statements against interest is far from clear. In *New Mexico v. Earnest*, [477 US 648, 106 S Ct 2734, 91 L Ed 2d 539 (1986),] * * * state court had found that although an in-custody inculpatory statement passed evidentiary muster under a rule which is identical to Federal Rule 804(b)(3), admission of the statement violated the defendant's right of confrontation, as interpreted by the Supreme Court in *Bruton v. United States*, [391 US 123, 88 S Ct 1620, 20 L Ed 2d 476 (1968),] and *Douglas v. Alabama*, [380 US 415, 85 S Ct 1074, 13 L Ed 2d 934 (1965)]. The majority of the Supreme Court, in a per curiam opinion, remanded to the state court. By refusing to affirm, the majority indicated that *Bruton* and *Douglas* do not demand exclusion of a statement admitted pursuant to the penal interest exception, and that in-custody statements do not automatically violate the Confrontation Clause. By citing to *Lee v. Illinois*, [476 US 530, 106 S Ct 2056, 90 L Ed 2d 514 (1986)], the majority seems to have indicated that an inculpatory statement may be admitted despite a Confrontation Clause challenge if it is sufficiently reliable." (Footnotes omitted.)

■■ ■■ An out-of-court statement may be admitted over a confrontation clause objection if it has adequate "indicia of reliability." *Idaho v. Wright*, 497 US 805, 820, 110 S Ct 3139, 111 L Ed 2d 638 (1990). Adequate "indicia of reliability" exist if, in the alternative, either the statement falls within a "firmly rooted" hearsay exception, or it is "supported by particularized guarantees of trustworthiness." 497 US at 816. This court need not consider whether the against-penal-interest hearsay exception qualifies as "firmly rooted" for Sixth Amendment purposes, because there are adequate "particularized guarantees of trustworthiness" present here.

■■■ We must first note that the other evidence presented at trial that corroborates the truth of the out-of-court statement — by tending to show independently that defendant is guilty as charged — cannot be used to show that a statement inculpating a defendant has "particularized guarantees of trustworthiness."[10] That must be shown by the totality of

10 These "particularized guarantees of trustworthiness" are said to substitute for the missing opportunity for cross-examination of the declarant which would itself

circumstances "surround[ing] the making of the statement and that render the *declarant* particularly worth of belief." *Idaho v. Wright, supra,* 497 US at 819, 822 (emphasis added). In *Idaho v. Wright,* the Court stated:

> "In short, the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trust-worthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthi-ness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." *Id.* at 823.

■ The trial court ruled without the benefit of the United States Supreme Court's later-announced opinion in *Idaho v. Wright, supra.* Therefore, it is understandable that the trial court considered, among other things, circumstances that also corroborated defendant's guilt when discussing on the record whether a statement had the particularized guarantees of trust-worthiness necessary to satisfy the Sixth Amendment Confrontation Clause.[11] For example, the trial court considered other evidence independently pointing to defendant's guilt of the crime charged, such as the fruits of the burglary being found on defendant, when discussing whether indicia of reliability were present. Such "corroborating circumstances" independently proving a defendant's guilt more properly belong in considera-tion of whether any error in admitting hearsay statements is harmless. *Id.* However that may be, the trial court's use of other evidence corroborating defendant's guilt to bolster the truth of the statement inculpating defendant was improper for a Sixth Amendment analysis.

---

be a guarantee of trustworthiness of the testimony. No one suggests that cross-examination of a live witness who gives evidence of guilt would become unnecessary merely because there was also other evidence independently pointing toward guilt.

[11] This rule, of course, does not affect the requirement of corroboration or testimony of an accomplice found in ORS 136.440 ("[a] conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant to the commission of the offense"). Rimer's calling out to defendant, defendant's statement attempting to reassure Rimer, and the fact that other fruits of the burglary that produced the items being forged were found on defendant are more than adequate corroboration of Rimer's statements to satisfy ORS 136.440.

█ ██ That does not mean that legal error was committed when the trial court enumerated the improper considerations for supporting its ruling, if the ruling was otherwise correct, *i.e.*, if other grounds that were consonant with confrontation clause requirements existed for making the same ruling.[12]

This court has itself, on occasion, suggested additional grounds for admitting evidence than those used by the trial court. In *State v. Moen*, 309 Or 45, 59, 786 P2d 111 (1990), the court stated:

> "Although not offered by the state as an excited utterance, the statement * * * also would qualify for admission under * * * an exception to the hearsay rule for statements by a person laboring under the stress of an event that caused excitement."

In the present case, the statement was offered as against penal interest and admitted on that ground.

 Where a trial judge makes a correct ruling admitting evidence but articulates an erroneous reason for it, there is no need to reverse. *See* OEC 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected").[13]

---

[12] As the Supreme Court of the United States has noted:

"[W]e do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' * * * The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury.' " *Securities Comm'n v. Chenery*, 318 US 80, 88, 63 S Ct 454, 87 L Ed 626 (1943).

*See also Clark v. City of Los Angeles*, 650 F2d 1033, 1036 (9th Cir 1981) (stating general rule that an appellate court reviews sufficiency of the evidentiary facts to support a trial court's decision to admit evidence and that,

"[i]f the grounds given by the district court for admissibility of the evidence are incorrect, the court's ruling will be reversed only if there are no grounds under which the evidence could properly be admitted,"

but reversing because the court determined that all grounds for admission of hearsay diary were faulty), *cert den* 456 US 927 (1982).

[13] If the ruling were one excluding evidence, a similar result would obtain according to Professor Kirkpatrick, who states:

■　In this case, appropriate grounds for admission of the evidence exist in the record. It appears the trial court was asking the right question of itself (namely, "was the statement against declarant's interest in the custody circumstances during which it was uttered?") in order to qualify the statement as an admissible exception to the hearsay rule. Recognizing that the statement is against declarant's penal interest is an identification of its indicia of reliability. The trial court's enumeration of other facts thought to support those indicia is but surplusage. Even though those last enumerated facts — that evidence of crime was found on defendant's person — may not properly be used to establish that the statement was against declarant's penal interest at the time and under the circumstances when the statement was made, their enumeration does not erase the correctness of the legal conclusion that a reasonable person in declarant's position would believe that the statement was against declarant's penal interest.

In this case, we know what facts the trial court relied on. We need not guess as to what the trial court found as fact. *See U.S. v. Accetturo*, 966 F2d 631, 634 (11th Cir 1992) (after the intervening decision in *Idaho v. Wright, supra*, the appellate court "must decide whether, if the corroborating evidence [of guilt] is not considered, there were adequate guarantees of trustworthiness to justify admitting" the statement), *cert den* ____ US ____, 113 S Ct 1053 (1993); *State v. Daniel*, 169 Ariz 73, 817 P2d 18 (1991) (also using this approach), *cert den* ____ US ____, 112 S Ct 1243 (1992); *see also Lambert Pharmacal Co. v. Roberts Bros.*, 192 Or 23, 233 P2d 258 (1951) (if subsequent to the trial court judgment and before the decision of the appellate court the governing law

---

"Exclusion of evidence on an inappropriate ground will generally may be considered harmless error if it should have been excluded on some other ground. In *Ledbetter v. Complete Abrasive Blasting Systems*, 76 Or App 10, 13-14, 707 P2d 1292, 1294 (1985), the court stated: 'We will not ordinarily reverse a trial court for sustaining an objection if there was any ground on which that objection could have been sustained.' In *Carlson v. Piper Aircraft Corp.*, 57 Or App 695, 705 n 12, 646 P2d 43, 49, *rev denied* 293 Or 801, 653 P2d 999 (1982), the court held: 'When it appears from the record that the trial court arrived at a correct result but on grounds different from those which, in our opinion, are more correct, the judgment of the trial court will be affirmed.' " Kirkpatrick, Oregon Evidence 19 (2d ed 1989).

changes, the current law must be applied).[14] Some of the factors discussed previously are not "corroboration" of defendant's guilt of the crime but, given that the statement is against declarant's interest in avoiding criminal liability, are true "trustworthiness guarantees" of the statement itself. Those other factors are as follows: All of Rimer's statements implicated her in crime. Rimer's first statement attempted to shift blame away from defendant but not away from her as declarant, her second statement does not attempt to evade her criminal liability, there is no evidence of police threats or promises of favorable treatment or other possible motives to falsify, and, under the circumstances, Rimer would have been keenly aware of how deeply her entire statement incriminated her.

█ Such factors as Rimer's calling out to defendant, and defendant's statement attempting to reassure Rimer, although they may "corroborate" the truth of the statement, are also indicia of reliability of the statement, because they show that the declarant had a basis of knowledge for a declaration against her interest that also implicated defendant. *See State v. McLaughlin*, 135 NH 669, 610 A2d 809 (1992) (whether the declarant's statements were based on personal knowledge is a factor to be considered in determining a statement's reliability). Proof of these events may have a dual impact; in the present context we only consider them for the purpose of establishing ability to observe.[15] We agree with 2 McCormick on Evidence § 319, at 346-47 and 346 n 21 (4th ed 1992), that neither declarant's custody status nor the fact of police interrogation automatically overrides the statutorily assumed trustworthiness guarantee. The above indicia of reliability are sufficient to support the admission of the statement in light of the Sixth Amendment Confrontation Clause.

---

[14] Where the federal trial court ruled before the decision in *Idaho v. Wright*, 497 US 805, 110 S Ct 3139, 111 L Ed 2d 638 (1990), but the appellate court decision came thereafter, *U.S. v. Accetturo*, 966 F2d 631, 634 (11th Cir 1992), holds that the *appellate* court "must decide whether, if the corroborating evidence [of guilt] is not considered, there were adequate guarantees of trustworthiness to justify [admission]."

[15] Certainty that the absent declarant made the statement may be a corroborating factor. M. Graham, Handbook of Federal Evidence 989-90 n 15, § 804.3 (3d ed 1991). The available, but unused, tape recording of Rimer's statement points toward that certainty.

■ The reliability of Rimer's hearsay statement is crucial to the accuracy of the conviction obtained without confrontation of Rimer. That reliability in turn depends on whether a reasonable person in Rimer's situation, at that place and time, would not have made the statements inculpating herself (and defendant) unless those statements were true. Confrontation, including its cross-examination aspects, may be dispensed with only if such a reliability guarantee is present at the time that the inculpatory statement is made. Whether that reliability guarantee is present is an issue raised by Rimer's in-custody status at the time she made the inculpatory statements.

However, as noted above under discussion of the Article I, section 11, confrontation issue, the trial judge found that the indicia of reliability were present and thus, by implication with which we agree, that the facts or circumstances surrounding Rimer's custody status had not eroded the reliability guarantee at the time the statements were made. A reasonable person in Rimer's position would not have made the statement unless the person believed that it was true. Although the desire to curry favor may well arise in a custody setting, we consider Rimer as a reasonable person who made this inculpatory statement soon after arrest in the circumstances in which the statement was made and conclude that that was not her motivation.

Rimer's statements against her penal interest are sufficiently reliable to be admitted under the statutory hearsay exception for statements against interest notwithstanding the Confrontation Clause of the Sixth Amendment to the Constitution of the United States.[16]

---

[16] The dissent cites cases that are factually and procedurally different from the present case to support the proposition that Rimer's statement was not against her penal interest. The Court in *Bruton v. United States*, 391 US 123, 128 n 3, 88 S Ct 1620, 20 L Ed 2d 476 (1968), expressly limited its decisions to cases involving *inadmissible* hearsay. *See also Dutton v. Evans*, 400 US 74, 91 S Ct 210, 27 L Ed 2d 213 (1970) (plurality opinion) (the defendant's rights were not violated by admission of evidence of an accomplice's incriminating statement when it fits within the confines of the state's hearsay exception, there for co-conspirator's statements). *Bruton* is additionally distinguishable as having been limited to its facts; a joint trial where the unconstitutionally obtained confession of a non-testifying co-defendant was, as to the defendant, inadmissible hearsay. *Richardson v. Marsh*, 481 US 200, 207, 107 S Ct 1702, 95 L Ed 2d 176 (1987). The present case involves a recognized hearsay exception, where Confrontation Clause concerns were examined before the evidence was admitted.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**UNIS, J.,** dissenting.

In this case, we address, as a matter of first impression, a difficult and subtle question involving the interplay of the hearsay rule and the state and federal Confrontation Clauses. The specific question is whether a statement by a nontestifying hearsay declarant,[1] made to a person known by the declarant to be a law enforcement officer while in police custody, that inculpates a criminal defendant is admissible under the statement-against-penal-interest exception to the hearsay[2] rule, Oregon Evidence Code (OEC) 804(3)(c),[3] and, if it is admissible, whether admission of such evidence violates the defendant's rights to confrontation guaranteed by Article I, section 11, of the Oregon Constitution[4] and the Sixth Amendment to the Constitution of the United States.[5]

---

*Lee v. Illinois*, 476 US 530, 545, 106 S Ct 2056, 90 L Ed 2d 514 (1986), is also distinguishable, involving a joint trial to the court and a confession of a co-defendant produced by lengthy formal police interrogation at the jail, where a presumption of unreliability, as to the jointly tried defendant, obtains. *Lee* holds that the presumption may be overcome, making the statement admissible in the joint trial, but in that case, unlike the present case, there was no showing of any sufficient independent indicia of reliability. *Lee* held that error in admitting the evidence without the showing of reliability might be deemed harmless by the Illinois state court when that court considered the case again on remand.

[1] For purposes of the hearsay rule, OEC 801(2) provides that "[a] 'declarant' is a person who makes a statement."

[2] OEC 802 provides:

"Hearsay is not admissible except as provided in [OEC 801 to 806] or as otherwise provided by law."

[3] OEC 804(3)(c) provides that a "statement which * * * at the time of its making * * * so far tended to subject the declarant to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true" is not excluded by the hearsay rule. The rule sets forth an additional requirement for a statement against penal interest offered to exculpate the accused:

"A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

There is no similar corroboration requirement for inculpatory statements offered by the prosecution against a criminal defendant.

[4] Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

[5] The Sixth Amendment to the Constitution of the United States provides:

The majority holds that the statements, although hearsay, were properly admissible.

In my view, Officer Marley's testimony as to declarant's (Rimer's) unsworn statement inculpating defendant, made while in police custody to a person known by the declarant to be a law enforcement officer, was not sufficiently contrary to her penal interest to qualify for admission under the statement-against-penal-interest hearsay exception, OEC 804(3)(c).[6] Moreover, the admission of such evidence violated defendant's confrontation rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the Constitution of the United States. I, therefore, respectfully dissent.

## I. OEC 804(3)(c)

While hearsay statements generally are not considered adequately reliable to be admitted at trial, the statement-against-penal-interest exception to the hearsay rule is based on both necessity and reliability. The need to resort to hearsay is met by the showing of the declarant's unavailability as a witness at trial.[7] The personal knowledge and the disserving nature of the statement tend to increase apparent reliability. The psychological assumption and common-sense belief is that a person generally does not rashly or falsely make a statement that is against his or her penal interest, *i.e.*, that subjects that person to criminal prosecution.[8] *See* Legislative Commentary to OEC 804(3)(c)

---

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

Defense counsel preserved the hearsay and the state and federal constitutional confrontation objections by distinctly and timely invoking the three grounds for objection.

[6] There is no claim in this case that Rimer's hearsay statement qualified for admissibility under the coconspirator exemption to the hearsay rule, OEC 801(4)(b)(E). *See infra*, note 19.

[7] OEC 804(1)(a)-(e) lists five situations in which a hearsay declarant is considered "unavailable as a witness" for the purposes of the hearsay exceptions in OEC 804.

[8] A statement against penal interest is one that tends to subject the out-of-court declarant to criminal sanctions. *See* 2 McCormick on Evidence 344, § 319 (4th ed 1992) (a statement against penal interest "is one that would be admissible against declarant in a criminal prosecution; it need not be a confession, but must involve substantial exposure to criminal liability").

(*reprinted in* Kirkpatrick, Oregon Evidence 635 (2d ed 1989)) ("[a] statement against interest carries a circumstantial guaranty of reliability, because people generally do not make statements that are damaging to their interests unless they believe they are true").

The scope of the statement-against-penal-interest exception must be commensurate with the rationale that excepts it from the hearsay rule. Thus, only a "statement which was at the time of making * * * so far tended to subject [the declarant] to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true" may be admitted as a statement against penal interest under OEC 804(3)(c). The statement-against-penal-interest exception does not make admissible any statement of a declarant that is not itself against the penal interest of the declarant. The reliability of a statement against penal interest emanates from the against-penal-interest nature of the particular statement that is based on personal knowledge and not from the notion that the declarant is in a trustworthy frame of mind for all statements that she makes at the same time (*i.e.*, for statements that are not against her penal interest).

The rationale for the exception to the hearsay rule for statements against penal interest is incorporated as prerequisites to admissibility at trial. Before an out-of-court statement is admissible as a statement against penal interest under OEC 804(3)(c), the proponent of the evidence must show by a preponderance of the evidence, after appropriate objection has been raised, (1) that the declarant is "unavailable as a witness," *State v. Thoma*, 313 Or 268, 276, 834 P2d 1020 (1992) (citing *State v. Pinnell*, 311 Or 98, 114, 806 P2d 110 (1991)), and (2) that the "statement * * * at the time of its making * * * so far tended to subject the declarant to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." Whether these factual preconditions to admissibility of evidence under OEC 804(3)(c) have been established are preliminary questions of fact to be determined by the trial court under OEC 104(1). *State v. Carlson*, 311 Or 201, 211-13, 808 P2d 1002 (1991).

I agree with the majority that the first factual precondition to admissibility under OEC 804(3)(c), unavailability of the declarant (Rimer), was met. Rimer was unavailable as a witness under OEC 804(1)(e) because she was absent from the trial, the proponent of her statement was unable to procure her attendance by process or other reasonable means, and there is nothing to suggest that the prosecution, as the proponent of her statement, was responsible for her absence. *See* OEC 804(2) (a declarant is not unavailable as a witness for purposes of the hearsay exceptions set forth in OEC 804 if the proponent of the declarant's statement is responsible for the declarant's absence).

The crucial inquiry in this case is whether the second factual precondition to admissibility under OEC 804(3)(c) has been met, *i.e.*, whether the declarant's unsworn, out-of-court statement inculpating defendant was in fact truly against her penal interest at the time she made the statement to a person she knew was a police officer while she was in police custody.

Here, Rimer's statement clearly contains some material against her penal interest. Rimer explicitly inculpated herself in criminal conduct by admitting that the traveler's check that she had attempted to cash was part of the proceeds of a burglary and that she had cashed a forged traveler's check elsewhere. But that does not end the inquiry because Rimer's statement also inculpated defendant. The question then is whether Rimer's statement inculpating defendant was against Rimer's penal interest.

When a declarant's statement implicates both the nontestifying declarant and the defendant and is offered by the prosecution against the defendant, courts have shown reluctance to admit the statement. Cleary, Strong, Broun and Mosteller, Evidence: Cases and Materials 874 (4th ed 1988).

" '[Post-arrest] statements of a codefendant have traditionally been viewed with special suspicion. Due to the strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.' " *Lee v. Illinois*, 476 US 530, 541, 106 S Ct 2056, 90 L Ed 2d 514 (1986) (quoting *Bruton v. United States*, 391 US

123, 141, 88 S Ct 1620, 20 L Ed 2d 476 (1968) (White, J., dissenting)).

"Whether a statement is in fact against the declarant's [penal] interest must be determined from the circumstances of each case." Legislative Commentary to OEC 804(3)(c) (*reprinted in* Kirkpatrick, *supra*, at 636).[9] As one court observed, "[d]epending upon the circumstances in which it is made, a particular statement which is ostensibly disserving may in fact be either neutral or self-serving [*i.e.*, advance declarant's interests]." *United States v. Riley*, 657 F2d 1377, 1384 (8th Cir 1981). Such a statement would not be against penal interest. *Id.*

The Supreme Court of the United States consistently has held that an accomplice's statement that incriminates another is *presumptively unreliable. See, e.g., Lee v. Illinois, supra,* 476 US at 543. *See also New Mexico v. Earnest,* 477 US 648, 649-50, 106 S Ct 2734, 91 L Ed 2d 539 (1986) (Rehnquist, J., concurring) (*weighty presumption of unreliability* attaches to a codefendant's out-of-court statement). *Cf. Bourjaily v. United States,* 483 US 171, 183-84, 107 S Ct 2775, 97 L Ed 2d 144 (1987) (presumption overcome where nontestifying coconspirator's statement inculpating defendant satisfied firmly-rooted coconspirator exemption to hearsay rule).

"The pattern of the cases is that where the statement inculpates both the declarant and another, it is generally held inadmissible if made while in police custody. *See, e.g., United States v. Riley,* [*supra*]; *United States v. Palumbo,* 639 F.2d 123 (3d Cir.), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L. Ed. 2d 90 (1981)." Cleary, Strong, Broun and Mosteller, *supra*, at 875. *See also United States v. Sarmiento-Perez,* 633 F2d 1092, 1101-04 (5th Cir 1980) (adopting a *per se* rule of exclusion for such statements induced as a consequence of custodial interrogation). "However, the statement may be admitted if it is made to an apparent friend or confederate." Cleary, Strong, Broun and Mosteller, *supra*, at 875 (citing *United States v. Briscoe,* 742 F2d 842 (5th Cir

---

[9] The Advisory Committee's Note to the federal evidence counterpart, FRE 804(b)(3) (then FRE 804(b)(4)), states that "[w]hether a statement is in fact against interest must be determined from the circumstances of each case." 56 FRD 183, 328 (1973).

1984) (statement to brother of defendant), and *United States v. Katsougrakis*, 715 F2d 769 (2d Cir 1983) (statement of arsonist who was approaching death from his burns made privately to friend)). *See also Fuson v. Jago*, 773 F2d 55 (6th Cir 1985) (" 'a statement (confession) admitting guilt and implicating another person in the same crime, and *made while in custody*, might well be motivated by a desire to curry favor with the authorities and, hence, fail to qualify as being against interest,' " and, without conditions clearly indicating the trustworthiness of the statement, held inadmissible) (interpreting Ohio Rules of Evidence; quoting Ohio Rev Code Ann Ev R 804, staff note at 411 (emphasis in original)).

In the context of a coconspirator statement, this court in *State v. Farber*, 295 Or 199, 212, 666 P2d 821 (1983), recognized that the identity of the person to whom the statement inculpating a coconspirator was made and whether the statement was made while the declarant was in police custody are important factors in determining the reliability of a hearsay declarant's statement inculpating a coconspirator. The fact that the hearsay declarant's (coconspirator's) statement was made to friends and the fact that the declarant was not in police custody at the time he made the statement influenced this court to conclude that the challenged coconspirator statement in *Farber* was reliable.[10]

Federal courts, in interpreting Federal Rule of Evidence (FRE) 804(b)(3), the federal counterpart to OEC 804(3)(c), generally view a declarant's statement inculpating another with the skepticism suggested in the Advisory Committee's Note to that rule, pointing out that a declarant's statement that incriminates oneself and another person may well be in one's own best interest to "curry favor with the authorities."[11] The same skepticism about the reliability of a

---

[10] *See also* 5 Wigmore, Evidence 361 n 7, § 1477 (Chadbourn rev 1974) ("a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. * * * On the other hand, the same words spoken under different circumstances, *e.g.*, to an acquaintance, would have no difficulty in qualifying").

[11] The Advisory Committee's Note to FRE 804(b)(3) (then FRE 804(b)(4)) states that "[a] statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." 56 FRD 183, 328 (1973).

declarant's out-of-court statement is reflected in the Commentary to OEC 804(3)(c).[12] *See* Kirkpatrick, *supra*, at 639.

I turn now to the troublesome question whether, under the circumstances of this case, Rimer's statement inculpating defendant, as testified to by Officer Marley, was truly against her penal interest at the time she made it. After she was arrested and advised of her *Miranda* rights and while she was in police custody, Rimer first told Officer Marley that she had received the victim's identification and traveler's check from several different friends. When Marley told Rimer that he did not believe her and questioned her further, Rimer changed her story. Rimer told Marley that defendant and another person had committed the burglary while she, Rimer, stayed in the car. It is this unsworn, out-of-court, collateral inculpatory statement[13] that requires scrutiny.

[12] "As the Commentary [to OEC 804(3)(c)] notes, '[a] statement admitting guilt and implicating another person, made while in custody, may well spring from a desire to curry favor with the authorities and hence fail to qualify as being against the declarant's interest.' " Kirkpatrick, Oregon Evidence 639 (2d ed 1989). *See also* Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 Harv L Rev 1378, 1396 (1972) ("the naming of another as a compatriot will almost never be against the declarant's own interest and thus will contain little assurance of reliability on this ground").

[13] A statement that inculpates both the declarant and the defendant in criminal activity can be divided into *collateral* and *noncollateral* inculpatory statements. Professor Graham explains the distinction between *collateral* and *noncollateral* statements.

"In a *noncollateral* inculpatory statement, the facts inculpating the defendant are found in the portion of the statement directly against the declarant's interest. In his treatise, District Judge Jack Weinstein presents as an example of such a statement one in which the declarant states that he has stolen goods, with the statement admitted against a defendant charged with possession of the stolen goods. 4 J. Weinstein & M. Berger, Weinstein's Evidence: Commentary on Rules of Evidence for the United States Courts and Magistrates ¶ 804(b)(3)[03] at 804-96-97 (1977). * * * Here, the fact that the declarant has stolen the items is disserving to the declarant and inculpates the defendant. Because such statements can arise only where a defendant is accused of less common crimes, they do not appear often in the cases.

"The more common type of inculpatory statement is the *collateral* inculpatory declaration. Here, the inculpatory material is not found in the portion of the statement directly against the declarant's interest, but appears instead in another portion of the statement. An example of such a statement would be the declarant's assertion that 'John and I robbed the bank' admitted in John's trial for bank robbery. In this example the relevant material is not contained in the disserving segment ('I robbed the bank.'); instead, it is in the collateral portion ('John robbed the bank.')." Graham, Handbook on Federal Evidence 985 n 10, § 804.3 (3rd ed 1991) (emphasis in original).

A close examination of the totality of the circumstances is required in order to determine whether the inculpatory statement so contravenes Rimer's penal interest that a reasonable person in her position would not have made that statement unless she believed it to be true. In *Idaho v. Wright*, 497 US 805, 819-20, 110 S Ct 3139, 111 L Ed 2d 638 (1990), the Supreme Court held that, for Confrontation Clause purposes, trustworthiness must be determined by the totality of the circumstances surrounding the making of the statement that renders the declarant's statement particularly worthy of belief. Other evidence at trial that corroborates the truth of the statement. (*e.g.*, physical or other confirming evidence from witnesses) is not to be considered in the constitutional trustworthiness analysis, because the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial. *Id.* at 823. This constitutional trustworthiness standard is the appropriate standard for determining the evidentiary admissibility of hearsay proffered under the statement-against-penal-interest exception. If this standard is not used, "the [against-penal-interest] trustworthiness standard will be meaningless in cases where the declarant is unavailable because the standard would permit hearsay by relying on the very corroboration that must be excluded for Confrontation Clause purposes." Raeder, *The Effect Of The Catchalls On Criminal Defendants: Little Red Riding Hood Meets The Hearsay Wolf And Is Devoured*, 25 Loyola of Los Angeles L Rev 925, 941-42 (1992) (quoted language discussing catchall exception, but analysis equally applicable to against-penal-interest exception as adapted). "Moreover, as the court in [*Idaho v.*] *Wright* noted, '[t]here is a very real danger that a jury will rely on partial corroboration to mistakenly infer the trustworthiness of the entire

*See also* Comment, *Federal Rules of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest*, 66 Cal L Rev 1189, 1190 n 7 (1978). For an analysis of the admissibility of collateral statements arguably against penal interest, see Note, *Declarations Against Interest — Rules of Admissibility*, 62 Northwestern U L Rev 934, 947-49 (1968).

statement.' " *Id.* (quoting *Idaho v. Wright, supra,* 497 US at 824).[14]

Rimer's statement was not spontaneous; it was not made to friends or confederates. It was a collateral inculpatory statement, given under potentially coercive circumstances that could not at trial, and cannot now, be adequately examined. The reliability of Rimer's inculpatory statement is attenuated because Rimer made it, while in police custody, to a person known by Rimer to be a police officer. There were, in addition, obvious possible motives for falsification: the natural desire to curry favor with the authorities, the desire to minimize culpability by shifting blame or implicating others, the hope that she would likely be given more lenient treatment if she provided evidence for the prosecution of another person, the desire for revenge, or a desire to deceive for some other reason.[15] Any one or more of these factors might lead Rimer to misrepresent or exaggerate defendant's role (thereby attempting to diminish her own role) in the criminal enterprise. These circumstances are not counterbalanced by relevant circumstances indicating the reliability of Rimer's statement inculpating defendant. It is reasonable to suppose that Rimer might have viewed the ostensibly or arguably disserving statement inculpating defendant to be in her interest rather than against it.

I would hold that the prosecution has not shown by a preponderance of the evidence, as it must, that Rimer's statement inculpating defendant was in fact truly against her interest. The reliability prong of the rationale for the exception for statements against penal interest is lacking as to that part of Rimer's statement.[16]

---

[14] The use of other evidence at trial that corroborates the truth of the statement is best taken into account in any harmless error analysis. *Idaho v. Wright,* 497 US 805, 823, 110 S Ct 3139, 111 L Ed 2d 638 (1990).

[15] Whether or not Rimer did in fact curry favor by implicating someone else is not significant to the inquiry into whether her statement was reliable; rather, the proper inquiry is limited to the "totality of the circumstances" that surround the *making* of the statement and that render Rimer particularly worthy of belief.

[16]

"A number of commentators, including Wigmore, have analogized the inculpatory confession to a statement which has both self-serving and disserving aspects * * * and have concluded that the rationale for the exception for

When a hearsay declarant's statement contains statements of fact that are against the declarant's penal interest and statements of fact that are not against declarant's penal interest, and which are inculpatory of a defendant, it is suggested that the most realistic method of adjusting admissibility to the reliability on which the exception rests is to exclude that part of the statement that inculpates the defendant. Carlson, Imwinkelried, and Kiona, Materials for the Study of Evidence 513 (1983); McCormick's Handbook of the Law of Evidence 677 (2d ed 1972). *See also United States v. Lilley,* 581 F2d 182, 188 (8th Cir 1978) (suggesting possibility of this method of handling such evidence). Rimer's statements are severable. I would apply that approach in this case. I would hold that Rimer's hearsay statement inculpating defendant was not admissible under OEC 804(3)(c).

## II. CONSTITUTIONAL CONFRONTATION RIGHTS

Hearsay offered against a criminal defendant also implicates the criminal defendant's confrontation rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the Constitution of the United States. The fact that hearsay may be admissible under a hearsay exception does not nullify either the state or federal constitutional argument. The statement-against-penal-interest hearsay exception set forth in OEC 804(3)(c) surely was meant to apply to criminal proceedings only so far as consistent with the constitutional right of confrontation. *See State v. Smyth,* 286 Or 293, 297, 300, 593 P2d 1166 (1979) (making similar observation with respect to a particular statutory exception to hearsay rule). Even if Rimer's statement was admissible under OEC 804(3)(c), the admission of Rimer's statement inculpating defendant, in my view, violated defendant's Confrontation Clause rights under both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the Constitution of the United States.

In addressing the applicability of the right of confrontation under Article I, section 11, of the Oregon Constitution to

statements against [penal] interest is lacking for that part of the declarant's statements inculpating an accomplice." 4 Weinstein and Berger, Weinstein's Evidence 804-152, ¶ 804(b)(3)[03] (1992).

a particular hearsay exception, this court in *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), as stated by the majority in this case, 316 Or at 622-23, has adopted the analytical framework of *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980):

> "[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that [the declarant] is unavailable. Even then, [the declarant's] statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.[17] In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."

*See State v. Cornell*, 314 Or 673, 682-85, 842 P2d 394 (1992) (applying the analytical framework); *State v. Stevens*, 311 Or 119, 140-42, 806 P2d 92 (1991) (same).

Using this paradigm, we must decide in this case whether admission of Rimer's statement inculpating defendant violated defendant's right to confrontation under Article I, section 11. With respect to the first component, the unavailability component, the majority holds that Rimer was unavailable within the requirements of Article I, section 11, because she was absent in court and the prosecutor made a good-faith effort to obtain her presence at trial. 316 Or at 623. I agree.

As to the second component, the statement-against-penal-interest exception, OEC 804(3)(c), at least in its application to a statement of a nontestifying declarant inculpating a criminal defendant, could hardly be viewed as "firmly rooted."[18] The inquiry, then, is whether Rimer's statement

---

[17] In *State v. Cornell*, 314 Or 673, 684, 842 P2d 394 (1992), this court held that, "[a]lthough the hearsay exception for coconspirator statements has existed in different forms, * * * the coconspirator exemption in OEC 801(4)(b)(E) * * * is deeply rooted in satisfaction of the state confrontation clause."

[18] Neither this court nor the United States Supreme Court has clarified the meaning of the phrase "firmly rooted." Whether "firmly rooted" is a function of the longevity of an exception, the number of jurisdictions recognizing it, or both, or something else, remains uncertain. As to longevity, the statement-against-penal-interest exception is, however, a relatively new exception to the hearsay rule. 5 Wigmore, *supra*, at 349-50.

inculpating defendant bears adequate indicia of reliability, *i.e.*, particularized guarantees of trustworthiness. This court has looked to the precedents of the United States Supreme Court in determining what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay statements to satisfy our state constitutional Confrontation Clause. *State v. Campbell, supra*, 299 Or at 648. *See* Kirkpatrick, *supra*, at 523. I would hold that, for essentially the same reasons that I have stated in my discussion of admissibility under OEC 804(3)(c), Rimer's statement inculpating defendant, made while in police custody to a person known by Rimer to be a police officer, does not bear adequate indicia of reliability (particularized guarantees of trustworthiness) sufficient to overcome the heavy presumption of unreliability to satisfy Confrontation Clause concerns of Article I, section 11, of the Oregon Constitution.[19] *See Bruton v. United States, supra* (a nontestifying codefendant's confession that implicates another defendant may not be introduced at the pair's joint trial in an unredacted form, even if the jury is instructed to not consider the confession against the second defendant); *Lee v. Illinois, supra* (applying the *Ohio v. Roberts* two-part test, Supreme Court found that the

---

"[S]tatements against penal interest — whether exculpatory or inculpatory — were not well-received at common law in either English or American courts. The English courts first rejected a hearsay exception for such statements in *The Sussex Peerage*, [8 Eng Rep 1034 (HL 1844),] and the Supreme Court of the United States followed suit in *Donnelly v. United States*[, 228 US 243, 273, 33 S Ct 449, 57 L Ed 820 (1913)]." Note, *Inculpatory Statements Against Penal Interest and the Confrontation Clause*, 83 Columbia L Rev 159, 162-63 (1983).

The exception was first recognized in Oregon with the passage of the Oregon Evidence Code in 1981.

[19] This court recently held that the hearsay statements of a nontestifying coconspirator may be admitted against a defendant under the coconspirator exemption to the hearsay rule (OEC 801(4)(b)(E)) despite the lack of any face-to-face encounter with the defendant because the coconspirator exemption to the hearsay rule is firmly rooted. *State v. Cornell*, 314 Or 673, 685, 842 P2d 394 (1992) (holding analyzed under Article I, section 11, of the Oregon Constitution and under the Sixth Amendment to the Constitution of the United States, citing *Bourjaily v. United States*, 483 US 171, 183-84, 107 S Ct 2775, 97 L Ed 2d 144 (1987)). In *State v. Cornell, supra*, 314 Or at 678-81, the statement was made "during the course and in furtherance of the conspiracy," *i.e.*, it was "meant to advance the objectives of the conspiracy," *id*. In this case, in contrast, the hearsay exception is not firmly rooted and must be evaluated under the totality of the circumstances, including the fact that the statement was made by the declarant while in police custody. *See supra*, 316 Or at 638-39 nn 10-12, and 316 Or at 641.

trial court's reliance on a nontestifying codefendant's confession as substantive evidence against the defendant violated the Sixth Amendment Confrontation Clause);[20] *Richardson v. Marsh*, 481 US 200, 211, 107 S Ct 1702, 95 L Ed 2d 176 (1987) (Sixth Amendment "Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when * * * the confession is redacted to eliminate not only the defendant's name, but any reference to [the defendant's] existence").

For the same reasons, admission of Rimer's statement inculpating defendant violated defendant's Sixth Amendment Confrontation Clause rights.

## III. CONCLUSION

I would hold that Rimer's statement inculpating defendant was not admissible under OEC 804(3)(c) and that, even if it was, admitting the statement was a violation of defendant's state and federal confrontation rights. The error in admitting the statement was not harmless. Rimer's statement inculpating defendant was significant to the prosecution's case and devastating to the defense; it went to the very issue in dispute at trial.[21] I cannot, therefore, say that there was little likelihood that the error in admitting Rimer's hearsay statement affected the verdict. *See State v. Johnson*, 313 Or 189, 201, 832 P2d 443 (1992) (applying standard for determining whether evidential or constitutional error is harmless). Accordingly, I would reverse the judgment of conviction and remand the case to the circuit court for a new trial.

I respectfully dissent.

Van Hoomissen, J., joins in this opinion.

---

[20] In *Lee v. Illinois*, 476 US 530, 544 n 5, 106 S Ct 2056, 90 L Ed 2d 514 (1986), the court explicitly "reject[ed] the [prosecution's] categorization of the hearsay involved in th[e] case as a simple 'declaration against penal interest.' *That concept defines too large a class for meaningful Confrontation Clause analysis. We decide this case as involving a confession by an accomplice which incriminates a criminal defendant.*" (Emphasis added).

[21] Kirkpatrick suggests that the centrality of the evidence to the prosecutor's case (*i.e.*, the extent to which the hearsay statement bears directly on the central issues of the case) is a factor to consider in evaluating whether to admit hearsay evidence against a Confrontation Clause challenge. Kirkpatrick, *Confrontation And Hearsay: Exemptions From The Constitutional Unavailability Requirement*, 70 Minn L Rev 665, 682-83 (1986).