Argued and submitted September 25, reversed and remanded in part; otherwise affirmed December 13, 1995, petition for review denied March 6, 1996 (322 Or 644)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOSE ORDONEZ-VILLANUEVA,
*Appellant.*

(C94-06-33791; CA A85953)

908 P2d 333

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals from a judgment of conviction on three counts of delivery of a controlled substance and four counts of possession of a controlled substance. ORS 475.992. He argues that the trial court erred in denying his motion to suppress evidence obtained after police officers searched an apartment and in admitting at trial the hearsay statements of an out-of-court declarant. We affirm the order on the motion to suppress and reverse as to the admission of the hearsay statements.

Defendant was indicted on 11 counts of possession and delivery. He was convicted of delivery of cocaine for consideration (count 4), delivery of a substantial quantity of cocaine (count 5), delivery of cocaine as a commercial drug offense (count 6), possession of heroin (count 8), possession of a substantial quantity of cocaine (count 9), possession of cocaine as a commercial drug offense (count 10), and possession of cocaine (count 11). Much of the evidence regarding those crimes was found by the police during the search of an apartment pursuant to a search warrant. The pertinent facts regarding that search are as follows.

In June 1994, Officer Schober applied for a search warrant of an apartment[1] based on information that he had received from a confidential informant who had been in the apartment and had seen at least one ounce of cocaine there. The officer stated in the affidavit that, based on his training and experience, one ounce of cocaine "is far more than that [needed] for personal use and not readily disposed of by personal consumption in a short time." Schober also averred that he had received information from another officer that another confidential informant had stated that someone was selling drugs at the apartment.

A magistrate issued a search warrant based on the affidavit, and on June 7, 1994, police officers went to the apartment to conduct a search. One officer testified that he knocked on the door and yelled, "Police, search warrant," and then moved out of the way in order for another officer to force the door open with a battering ram. The time between

---

[1] The residence was being rented in the name of another person not involved in this proceeding.

the announcement and the forcible entry was approximately four seconds.

When the officers entered the apartment, they found three people. Defendant was holding a paper bag, which he tossed behind him. The bag contained three plastic sandwich bags in which could be seen a white powdery substance. At the time of trial, at least one of the bags had been tested and was identified as containing 27.6 grams of cocaine, or almost one ounce.[2] One officer testified that an ounce of cocaine is usually broken down into half grams or grams for selling on the street. Another officer testified that an ounce of cocaine is usually purchased by other dealers, who in turn break it up to sell to others. The officers also found a small amount of heroin in defendant's pocket and $530 in his wallet. When questioned, defendant said that he used heroin and cocaine, had been given the cocaine in the paper bag by unnamed friends, and "that he was going to take it with him back to California to give to some other unnamed friends."

The officers also found Martin Contreras-Mendoza at the apartment. Contreras-Mendoza told the officers that he had been making deliveries for defendant and that defendant usually paid him $10 a day for making deliveries. The officers found a paper on Contreras-Mendoza that contained what they suspected to be a record of deliveries. Contreras-Mendoza confirmed that the notations were records of four deliveries. During their search, the officers also found more heroin and evidence of drug manufacturing and trafficking including scales and manufacturing and packaging materials. They also answered several phone calls from people inquiring about purchasing drugs and intercepted people who came to the apartment to make purchases of cocaine.

At trial, defendant denied selling controlled substances. He testified that the paper bag seized at the apartment contained two ounces of cocaine which he had bought at the apartment for $1,400 from another person. He explained that he was going to work on a farm in Fresno, California, and planned to use the cocaine for personal consumption. He

---

[2] According to the Measures and Weights table in *Webster's Third International Dictionary* 1399 (1976), the metric equivalent of the apothecaries' weight of 1 ounce is 31.103 grams. The metric equivalent of the avoirdupois weight of 1 ounce is 28.349 grams.

maintained that the two ounces of cocaine would last him about a month. However, he also testified that he had consumed only one-half of an ounce of cocaine in the previous month.

■■ Defendant argues that the search was unreasonable because the officers failed to wait a reasonable time before entering the apartment. He argues that their entry was a violation of Article I, section 9, and the Fourth Amendment.[3] In *State v. Valentine/Darroch*, 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973), the Oregon Supreme Court held:

> "We are of the opinion that an otherwise lawful search and seizure accomplished by an entry which was made without announcement of presence and purpose is not an unreasonable search and seizure within the meaning of the Oregon Constitution. We reach this conclusion because of our opinion that the interest of the momentary protection of the privacy of the householder and the interest in protecting innocent persons from the violence that may stem from an unannounced entry are not of sufficient substance to rise to constitutional stature and require the exclusion of otherwise competent evidence." *Id.* at 65-66; *see also State v. Ford*, 310 Or 623, 640, 801 P2d 754 (1990); *State v. Bishop*, 288 Or 349, 353, 605 P2d 642 (1980).

Consequently, we conclude that the officers' actions in waiting only four seconds before entering did not violate defendant's constitutional rights under Article I, section 9.

■■ Next, defendant argues that the failure to wait a reasonable time for the apartment's occupants to respond to the officer's announcement violated his Fourth Amendment rights. He relies primarily on *Wilson v. Arkansas*, 514 US ____, 115 S Ct 1914, 131 L Ed 2d 976 (1995). At issue before the Court in that case was whether the "knock and announce" principle applies to the Fourth Amendment. The Court held that the common-law "knock and announce" principle was part of the "reasonableness" inquiry under the Fourth Amendment, stating:

---

[3] Defendant concedes that the officers did not violate Oregon's "knock and announce" statute under ORS 133.575(2). That statute provides:

"The executing officer shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be."

"At the time of the framing, the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and authority. In this case, we hold that this common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." 115 S Ct at 1915.

The Court also said:

"This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id*. at 1918.

The Court noted that the common-law rule recognized that certain situations justified a failure to knock and announce before entry, such as where a threat of physical violence existed, where an officer was in pursuit of a recently escaped arrestee, or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given[.]" *Id*. at 1918-19. It concluded:

"We need not attempt a comprehensive catalog of the relevant countervailing factors here. For now, we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. We simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." *Id*. at 1919.

In this case, it is apparent that the officers expected to find controlled substances at the apartment. The characteristics of controlled substances are such that they could easily be destroyed if the officers had been required to undergo a prolonged wait after their announcement. That is a circumstance in this case that justifies the reasonableness of a forced entry after waiting only four seconds. We conclude that under the circumstances, the search was reasonable under the Fourth Amendment, and the trial court did not err in denying defendant's motion to suppress.

Defendant next contends that the trial court erred in overruling his objection to the hearsay evidence of the statements of Contreras-Mendoza that Contreras-Mendoza had been making deliveries of controlled substances for defendant. Initially, Contreras-Mendoza was a codefendant in this case. However, on the day before the trial, he stipulated to the facts in the indictment.[4] Before the trial, defendant moved to exclude from evidence the statements of Contreras-Mendoza to the police, arguing that the statements were inadmissible hearsay that violated defendant's right to confrontation. Defendant's counsel further objected:

> *"[I] don't know if it suffices for the District Attorney to say that the [witness] does not wish to testify* for there to be a showing of unavailability if the District Attorney is relying on an exception that requires availability." (Emphasis supplied.)

The prosecutor then stated that the state was relying on the hearsay exception under OEC 804(3)(c),[5] and explained:

> "Your Honor, the definition of unavailability includes when * * * a witness refuses to testify by invoking the right to the Fifth Amendment.
>
> "* * * * *
>
> "And he's invoked the Fifth Amendment right, and he has a right to invoke the Fifth Amendment right, whether he's sentenced or not."

Defendant then asked for a continuing objection to the testimony, which the trial court granted.

Defendant argues on appeal that the state did not meet its burden of proving the unavailability of the declarant under OEC 804(1)(a). The state contends that defendant's

---

[4] It is a permissible inference, but not a necessary one, that Contreras-Mendoza stipulated to the facts in the indictment to preserve his right to appeal the trial court's pretrial rulings.

[5] OEC 804(3)(c) provides, in part:

"(3) The following are not excluded by [OEC 802] if the declarant is unavailable as a witness:

"* * * * *

"(c) A statement which * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

objections to the trial court were too ambiguous to have preserved that issue for purposes of appeal. It asserts that defendant's argument to the trial court could be understood to have raised the issue of the sufficiency of the proof, or to have asserted that the Fifth Amendment right does not apply to someone who has stipulated to the facts in the indictment. Nonetheless, we think it is clear that defendant raised the issue sufficiently to put the trial court on notice that defendant contested whether the state had met its burden of proving the witness' unavailability.[6] We conclude that defendant's statements to the trial court preserved his objection on appeal.

OEC 804(1)(a) provides:

" 'Unavailability as a witness includes situations in which the declarant:

"(a) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of a statement[.]' "

In *State v. Nielsen*, 316 Or 611, 853 P2d 256 (1993), the Oregon Supreme Court said:

"*The declarant's unavailability is a preliminary question of fact* for the trial court to decide under OEC 104(1). In this case, the state, as the proponent, had the burden of proving to the trial court by a *preponderance of the evidence* that [the witness] was unavailable." *Id.* at 618 (citations omitted; emphasis supplied).

Defendant argues that the state did not meet its burden of proof by merely proclaiming to the trial court that Contreras-Mendoza would assert his Fifth Amendment right if called to testify at trial. *See State v. Florez-Ortiz*, 133 Or App 62, 67, 889 P2d 1327 (1995) (holding that the state failed to meet its burden of showing that a codefendant was unavailable, where there was nothing in the record to support the state's assertion of unavailability). The state counters that it met its burden in this case, because the record contains evidence that Contreras-Mendoza intended to assert his Fifth

---

[6] *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (holding that raising an issue at trial is the most essential method of preserving error, identifying a source for a claimed position is less important, and making a particular argument is the least important method of preserving error).

Amendment privilege. Essentially, the state asks us to hold that the prosecutor's assertion that a witness would assert a privilege constitutes evidence that a court may consider in determining whether a witness is unavailable under OEC 804(1)(a) in a pretrial hearing under OEC 104(1).[7]

ORS 41.010 defines judicial evidence as

"the means, *sanctioned by law*, of ascertaining in a judicial proceeding the truth respecting a question of fact. Proof is the effect of evidence, the establishment of the fact by evidence." (Emphasis supplied.)

Thus, it is incumbent on the state in this case to prove by a means sanctioned by law that the witness is unavailable. The question is whether an assertion by counsel is a sanctioned means, *i.e.* evidence, by which unavailability may be proven. *Black's Law Dictionary* 656 (4th ed 1968) defines evidence as:

"Any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention."

As shown by that definition, a unilateral assertion of counsel is not evidence, because it is not a medium through which a party can present proof of a fact.[8] *See State v. Wallace*, 170 Or 60, 73, 131 P2d 222 (1942) ("[T]he statement of the District Attorney * * * was not evidence * * *."). We conclude that the prosecutor's assertion that Contreras-Mendoza would assert his privilege against self-incrimination did not establish the witness' unavailability by a preponderance of the evidence.[9] The trial court erred in finding

---

[7] OEC 104(1) provides:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."

[8] Facts which are stipulated to by the parties conclusively establish facts without the need of presenting evidence, *see Meier v. Northern Pacific Ry. Co.*, 51 Or 69, 75, 93 P 691 (1908), but in this case defendant did not accept the state's statements regarding the witness' unavailability.

[9] In Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure*, § 5055 at 274 (1977), the authors discussed whether under Federal Rule of Evidence (FRE) 104(a), from which OEC 104(1) is derived, *see State v. Carlson*,

Contreras-Mendoza unavailable to testify when there was no evidence of that fact.

Nevertheless, the state argues that the admission of the hearsay statements constituted harmless error. Under OEC 103(1), we can affirm a verdict despite the erroneous admission of evidence, if the error does not affect a "substantial right." Moreover, as a general proposition, we must affirm the verdict "if there is 'little likelihood that the error affected the verdict.' " *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988) (quoting *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987)).

Defendant concedes that Contreras-Mendoza's statements did not affect the jury's verdict as to the convictions for possession of a controlled substance, but he argues to the contrary regarding the convictions for delivery. The state disagrees, pointing out that even without the hearsay statements, the uncontroverted evidence is that defendant was in possession of at least 27.6 grams of cocaine, an amount greater than that kept for personal use. The state contends, moreover, that even during the search, the officers encountered people coming to the apartment to purchase drugs, and defendant was the only person in the apartment at the time in possession of a large amount of cocaine. Also, the apartment contained the equipment necessary to break down the cocaine into smaller portions. Furthermore, according to his statements to the police, defendant intended to give the

---

311 Or 201, 209 n 8, 808 P2d 1002 (1991), evidence of facts could be produced by oral statements of counsel. Wright and Graham explained:

"Read literally, [FRE] 104(a) would do away with the need for hearings on preliminary facts, for the offeror could simply assert that on the basis of his investigation he had formed the opinion that the foundational fact existed and the judge could make his finding on this hearsay opinion. * * * Obviously the drafters did not intend the Rule to be read literally. While the judge is not 'bound' by the Rules of Evidence, it was probably expected that the judges would apply them in most cases. The question then is not the existence of the power to disregard the Rules, but rather when that power should be exercised.

"One instance in which the judge might be justified in relying on the offeror's avowal is where the objector has no reason to suppose that the foundational fact does not exist but simply wishes to make his opponent jump through all the hoops. The Model Code had a provision permitting the judge to dispense with the rules of evidence with respect to facts as to which there was no bona fide dispute. This provision was not adopted with respect to facts in issue in the case, but [FRE] 104(a) can be read as accepting the rationale of this Model Code provision insofar as the proof of preliminary facts is involved."

cocaine to "unnamed friends" in California, and defendant admitted at trial that he had previously been convicted in California for delivery of controlled substances.

Nevertheless, Contreras-Mendoza's statements to the police constitute the only *direct* evidence linking defendant to the crimes of delivery. Most of the other evidence relied on by the state demonstrates only that someone was making sales of drugs from the apartment. There were three people arrested at the apartment including defendant. We cannot say that the admission of the hearsay statements had little likelihood of affecting the verdict on the drug delivery counts.

Reversed and remanded for new trial as to counts 4, 5 and 6; otherwise affirmed.