2010 UT 25

**STATE of Utah, Plaintiff and Appellee,**

v.

**Christian E. POOLE, Defendant and Appellant.**

No. 20070696.

Supreme Court of Utah.

April 30, 2010.

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., for plaintiff.

David M. Perry, Logan, for defendant.

DURHAM, Chief Justice:

¶ 1 Christian Poole entered conditional guilty pleas to three counts of rape of a child and is currently serving a six-year-to-life prison sentence. Because his pleas were conditional, Mr. Poole was permitted to appeal the district court's finding that he forfeited the right to confront the victim of his sexual assault through wrongdoing. The legal proposition of forfeiture by wrongdoing—that is, a defendant's wrongful acts may cause the defendant to forfeit the constitutional right to confrontation—is an issue of first impression for this court. We expressly acknowledge the doctrine's existence under the Utah Constitution and provide guidance for its application in criminal trials.

¶ 2 While we recognize the doctrine of forfeiture by wrongdoing, the procedural posture of Mr. Poole's criminal prosecution prevents us from determining whether he has forfeited his right to confrontation at this time. The district court's decision on this issue was premature; neither this court nor the district court is yet in a position to know whether the victim of Mr. Poole's alleged criminal acts will be unavailable at trial until the time of that trial. Given this holding, Mr. Poole should be allowed to withdraw his guilty plea under Rule 11(j) of the Utah

Rules of Criminal Procedure and proceed to trial if he so wishes, but with the risk that the witness will be unavailable and the district court will have to decide the forfeiture question.

## BACKGROUND

¶ 3 We provide an abbreviated recitation of the facts because we have declined to address the full merits of Mr. Poole's forfeiture appeal. That is not to say that the allegations against Mr. Poole are trivial. Indeed, prosecutors alleged that Mr. Poole began sexually abusing his daughter, C.P., when the girl was five or six years old. The sexual abuse continued throughout C.P.'s childhood and did not surface until she was 16 years old. An anonymous tip led the state's Division of Child and Family Services to launch an investigation into the abuse in late 2005. During a recorded interview in February 2006, C.P. confirmed and provided details of the sexual abuse to a DCFS social worker and a Cache County Sheriff's detective.

¶ 4 This interview formed the basis for the decision to arrest Mr. Poole and charge him with nine counts of rape of a child, seven counts of rape, and two counts of forcible sodomy. Moreover, C.P.'s statements in this interview are at the heart of this appeal. The state has assumed that C.P. would be unavailable at Mr. Poole's criminal trial and has attempted to have the statement C.P. made to investigators admitted against Mr. Poole in lieu of her live testimony. The basis for this assumption began earlier in the prosecution. Within days of Mr. Poole's arrest, Mrs. Poole moved the family to Idaho and sought independent legal representation for C.P. Mrs. Poole's actions caused the prosecutors to fear that C.P. would not appear at Mr. Poole's trial. As a result, the district court allowed prosecutors to depose C.P. in order to preserve testimony from a potentially unavailable witness. C.P. appeared at the deposition but refused to answer the prosecution's questions. Indeed, C.P.'s only response to the state's questioning was to nod in affirmance that she was unwilling to testify. Mr. Poole's defense attorney declined to ask C.P. any questions on the basis that the

state had failed to elicit any testimony from C.P. on direct examination.

¶ 5 Approximately two months later, prosecutors again attempted to take C.P.'s testimony. At a pretrial motion hearing on the subject of whether Mr. Poole forfeited his right to confront C.P. through his wrongful conduct that rendered her unavailable at trial, C.P. was again called as a witness and placed under oath. C.P. stated her name and address and then refused to answer any other questions posed by the prosecution. Once again, Mr. Poole's defense attorney declined to question C.P.

¶ 6 The state then asked the district court to find Mr. Poole had forfeited his right to confront C.P. through wrongful acts, thereby allowing the admission of C.P.'s out-of-court statements at trial. In its order, the district court recognized the doctrine of forfeiture by wrongdoing. With no Utah precedent on the topic, the district court was also required to set the scope of its forfeiture analysis. Ultimately, the district court determined that the state has the burden of proving forfeiture by wrongdoing by a preponderance of the evidence, and with the exception of privileges, the Utah Rules of Evidence do not apply to the decision on forfeiture by wrongdoing because the district court's decision is a preliminary issue of fact. Applying these standards to the allegations of wrongdoing by Mr. Poole, the district court found Mr. Poole had forfeited his right to confront C.P. through wrongful conduct. Specifically, the district court found Mr. Poole "worked in conjunction with his wife" to "pressure," "manipulate[ ]," and "threaten[ ]" C.P. into refusing to testify. "All of this can be laid at the defendant's feet. He caused the result that C.P. is now refusing to testify, and he should not benefit from this manipulation of a witness."

¶ 7 On the basis that C.P.'s out-of-court statements were admissible at his trial, Mr. Poole entered into a plea agreement with the state. In exchange for Mr. Poole's guilty plea to three counts of rape of a child, the state agreed to dismiss the other fifteen felony charges. Prosecutors also agreed that they would recommend Mr. Poole serve a six-year-to-life sentence as opposed to the maximum of 15–years–to–life available under

the charges. Mr. Poole's pleas were conditioned on the right to appeal the district court's decision on forfeiture by wrongdoing that authorized the state to present C.P.'s out-of-court statements at trial. Mr. Poole has properly appealed that decision. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(i) (2008).

## STANDARD OF REVIEW

▇ ¶ 8 Matters of constitutional interpretation are questions of law that we review for correctness, and we provide no deference to the district court's legal conclusions. *Ford v. State*, 2008 UT 66, ¶ 6, 199 P.3d 892; *Grand County v. Emery County*, 2002 UT 57, ¶ 6, 52 P.3d 1148. The district court's decision to admit testimony that may implicate the confrontation clause is also a question of law reviewed for correctness. *State v. Calliham*, 2002 UT 87, ¶ 31, 57 P.3d 220.

## ANALYSIS

### I. FORFEITURE BY WRONGDOING IS RECOGNIZED UNDER THE UTAH CONSTITUTION

▇ ¶ 9 The issue of whether Utah law recognizes the doctrine of forfeiture by

wrongdoing has never been squarely addressed by this court, but the district court embraced it; we agree with the district court's reasoning.[1] Utah law recognizes that a defendant may forgo the right to confrontation through conduct designed to make a witness unavailable at trial so long as the state can prove the defendant acted with the intent to accomplish that end.

▇ ¶ 10 Before turning to the scope of the forfeiture-by-wrongdoing doctrine under state law, it is important to properly frame the question presented here. The constitutions of both the United States and Utah guarantee criminal defendants the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Utah Const. art. I, § 12 (using the word "by" instead of "with"). Forfeiture by wrongdoing acts to eliminate these constitutionally guaranteed protections because of the defendant's affirmative acts. *See Crawford v. Washington*, 541 U.S. 36, 62, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("[T]he rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds."). Forfeiture by wrongdoing can

1. In addition to arguing that Mr. Poole forfeited his right to confrontation, the state has argued that Mr. Poole waived his right to confront C.P. by failing to cross examine her when given the opportunity. Moreover, the state suggests that the district court admitted C.P.'s statements on the basis of waiver as well as forfeiture. The state's characterization of the district court's ruling is inaccurate. The district court did warn Mr. Poole that a failure to question C.P. during a motion hearing may result in the waiver of his right to confront her later. But the district court's order is devoid of any analysis of waiver and is focused entirely on the topic of forfeiture by wrongdoing.

Additionally, we do not believe the facts of this case support a finding that Mr. Poole waived the right to confront C.P. Under the doctrine of waiver, a criminal defendant may waive the right to confrontation "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Given our analysis in Part II, we cannot hold that C.P. is unavailable until the time of Mr. Poole's trial. Moreover, we do not believe the facts of this case support a finding that Mr. Poole had a prior opportunity to cross-examine C.P. *See United States v. Owens*,

484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (holding that the confrontation clause can only be satisfied when the defendant is allowed to employ the "weapons available to impugn the witness'[s] statement"); *Douglas v. Alabama*, 380 U.S. 415, 420, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (holding that "effective confrontation of [a witness] was possible only if [that witness] affirmed the statement as his"); *Yanez v. Minnesota*, 562 F.3d 958, 963 (8th Cir.2009) (holding that the confrontation clause was satisfied despite the witness's lack of memory, because the witness was willing to testify, providing the defendant the "opportunity to expose potential bias or ulterior motives"); *Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir.1980) ("A witness is not available for full and effective cross-examination when he or she refuses to testify."); *State v. Villarreal*, 889 P.2d 419, 425 (Utah 1995) ("Because [the co-defendant] did not affirm or deny the prosecution's declarations attributed to [him, the defendant] had no effective opportunity to cross-examine him on facts that were central to establishing [the defendant's] guilt."); *State v. Nelson*, 725 P.2d 1353, 1357 (Utah 1986) (finding that the defendant had an opportunity to cross-examine where the victim took the stand at trial and affirmed that she spoke with investigators about her sexual assault but did not provide details of the attack).

be viewed as a limitation on the protection guaranteed by the constitution because the right to confront one's accuser no longer applies when the defendant has acted to cause a witness to be unavailable. The Supreme Court has unambiguously recognized the doctrine under the Sixth Amendment. *See Giles v. California,* —— U.S. ——, 128 S.Ct. 2678, 2682–83, 171 L.Ed.2d 488 (2008). Under the federal constitution, the protections of the confrontation clause cease to apply to a defendant who "(1) causes a potential witness's unavailability (2) by a wrongful act (3) undertaken with the intention of preventing the potential witness from testifying." *United States v. Houlihan,* 92 F.3d 1271, 1280 (1st Cir.1996); *see also Doan v. Carter,* 548 F.3d 449, 458 (6th Cir.2008).

¶ 11 Mr. Poole's challenge to the district court's decision in this case, however, is based on both the U.S. and Utah Constitutions. Mr. Poole has asked us to determine if article I, section 12 of the Utah Constitution provides greater protections to criminal defendants than its federal counterpart. The Utah Constitution could provide more protection to criminal defendants by limiting the influence the forfeiture-by-wrongdoing doctrine has on the confrontation clause. *See State v. DeBooy,* 2000 UT 32, ¶ 12, 996 P.2d 546. Moreover, an analysis under the state constitution is in order given this court's endorsement of the primacy model. *See State v. Tiedemann,* 2007 UT 49, ¶ 33, 162 P.3d 1106 (explaining and endorsing the primacy model, which dictates "that state laws be interpreted independently and *prior to* consideration of federal questions").

¶ 12 In evaluating the Utah Constitution, we have rejected a presumption that "federal construction of similar language is correct." *Id.* ¶ 37.

In theory, a claimant could rely on nothing more than plain language to make an argument for a construction of a Utah provision that would be different from the interpretation the federal courts have given similar language. Independent analysis must begin with the constitutional text and rely on whatever assistance legitimate sources may provide in the interpretative process.

*Id.; see also Am. Bush v. City of S. Salt Lake,* 2006 UT 40, ¶ 10, 140 P.3d 1235 (stating we look first to the "plain meaning" of the constitution). Other legitimate sources that we may look to include evidence of the framers' intent, the common law, particular traditions of our state, and decisions by our sister states and federal counterparts. *See Am. Bush,* 2006 UT 40, ¶ 11, 140 P.3d 1235 (discussing sources this court has examined to interpret the Utah Constitution).

¶ 13 Utah's confrontation clause states: "In criminal prosecutions the accused shall have the right ... to be confronted by the witnesses against him." Utah Const. art. I, § 12. The plain language of the clause does not preclude a finding that a criminal defendant may forgo the right to confrontation through misdeeds. Recognizing this fact, Mr. Poole attempts to persuade this court that the common law of Utah has previously rejected the forfeiture-by-wrongdoing doctrine because no Utah court has cited to the U.S. Supreme Court decision in *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878). *Reynolds,* decided eighteen years before Utah became a state, is universally held as the first instance in which the U.S. Supreme Court addressed the forfeiture issue. *See Giles,* 128 S.Ct. at 2687; *Commonwealth v. Edwards,* 444 Mass. 526, 830 N.E.2d 158, 165 (2005). *Reynolds* involved a bigamy prosecution arising from the Utah Territory in which an alleged plural wife of the defendant could not be located in anticipation of trial. 98 U.S. at 159–60. Mr. Poole argues that the facts underlying *Reynolds* imply that the framers of the Utah Constitution would not adopt a doctrine "finding its birth in *Reynolds.*" Mr. Poole's argument appears to be that because *Reynolds* involved a prosecution on the basis of polygamy, and because Utah had a history of plural marriage, the residents of the state who ratified the constitution would never have supported any policy having its origins in *Reynolds.*

¶ 14 Mr. Poole's argument misses the point of *Reynolds. Reynolds'* forfeiture holding was not authored as an indictment on polyga-

my and the Utahns who practiced it.[2] This holding stands for—and continues to be cited for—the policy that a criminal defendant who causes a witness's absence "is in no condition to assert that his constitutional rights have been violated" because the constitution "does not guarantee an accused person against the legitimate consequences of his own wrongful acts." *Id.* at 158. It is similar to a "clean hands" policy, common in equitable proceedings. The issue here is not about Utah's history and the practice of polygamy. The issue at the center of this appeal, as well as in *Reynolds,* is whether a defendant can benefit from wrongfully causing a witness's absence at his criminal trial. Nothing suggests the framers of the Utah Constitution intended otherwise.

¶ 15 Bolstering this view, the state has supplied us with evidence from the Utah constitutional convention that shows the framers of the Utah Constitution drafted the confrontation clause to mirror the protections of the federal constitution. The framers debated this very clause and rejected language that was not identical to the federal confrontation clause. Moreover, by the time the framers of the Utah Constitution gathered, the Supreme Court had already issued *Reynolds,* holding that the confrontation clause could be forfeited through wrongful conduct that renders a witness unavailable. That decision put Utah's founders on notice of the federal interpretation, and the drafters of the state constitution could certainly have incorporated greater protections had they desired. They debated this issue and expressly declined to do so. In the context of the decision in *Reynolds,* there is simply no indication that the framers of the state constitution would have been inclined to permit criminal defendants to render witnesses against them unavailable without any negative consequence. Finally, it appears that other states, when asked to adopt the doctrine of forfeiture by wrongdoing, have universally recognized the principle. *See Edwards,* 830 N.E.2d at 166–67.

¶ 16 Utah's public policy is the same as that underlying the federal interpretation and that of our sister states. The Supreme Court has succinctly articulated this policy:

> [W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the [confrontation clause] does not require courts to acquiesce. While defendants have no duty to assist the [s]tate in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system.

*Davis v. Washington,* 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (emphasis in original). To hold otherwise would provide criminal defendants with a strong incentive to tamper with the witnesses against them. *See Vasquez v. People,* 173 P.3d 1099, 1104 (Colo.2007) ("The forfeiture doctrine prevents defendants from profiting by their own misconduct; a defendant who eliminates a witness would otherwise be rewarded with the exclusion of that witness's out-of-court statements.").

¶ 17 Given the plain language of the Utah confrontation clause and the public policy at the time of the state's founding, Utah law, like its federal counterpart and that of a number of sister states, recognizes the doctrine of forfeiture by wrongdoing.

*A. Under Utah Law, Criminal Defendants Forfeit Their Right to Confront Their Accusers After Committing a Wrongful Act that Renders the Witness Unavailable When the Defendant Acted with the Intent of Making the Witness Unavailable at Trial*

¶ 18 Given that this is a question of first impression for this court, an analysis of the forfeiture doctrine is incomplete without defining the scope of forfeiture by wrongdoing under Utah law. As a general matter, courts universally answer affirmatively when asked whether a criminal defendant's right to confrontation is forfeited through the misconduct of the defendant. *See Edwards,* 830 N.E.2d at 166–67; Fed.R.Evid. 804, advisory committee's note (1997 amendments). The universally adopted rule has been that a defendant forgoes the right to confront a

---

**2.** The primary holding in *Reynolds* was derived from the free exercise clause of the First Amend-ment. *See State v. Holm,* 2006 UT 31, ¶¶ 50–51, 137 P.3d 726.

witness who is unavailable and that unavailability is based on a wrongful act of the defendant. *See United States v. Garcia–Meza*, 403 F.3d 364, 370 (6th Cir.2005); *State v. Sanchez*, 341 Mont. 240, 177 P.3d 444, 456 (2008); *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex.Crim.App.2006). A number of jurisdictions have promulgated a rule that adds a mens rea element to the forfeiture-by-wrongdoing test. *See People v. Moreno*, 160 P.3d 242, 245 (Colo.2007) (surveying jurisdictions that allow forfeiture by wrongdoing only after a showing that the defendant's wrongful act was done with the intent to make the witness unavailable); *Edwards*, 830 N.E.2d at 170 (holding that a defendant must act with "intent to procure the witness's unavailability").

¶ 19 Initially, the U.S. Supreme Court left the mens rea issue to the states and circuit courts to resolve. In 2008, the Court resolved the issue of the scope of the forfeiture by wrongdoing by holding that the doctrine can *only* be applied after a showing of intent on the part of the defendant. *Giles*, 128 S.Ct. at 2683–84. Under the Sixth Amendment "the exception applie[s] only when the defendant engaged in conduct *designed to* prevent the witness from testifying." *Id.* (emphasis in original). Given the supremacy doctrine, our test for forfeiture under state law must, at a minimum, provide protections for individual liberties that are co-existent with the guarantees of the U.S. Constitution.

■ ¶ 20 Under federal law, the forfeiture test is articulated through a three-element test that requires the state to show (1) the witness is unavailable at trial, (2) the witness's unavailability was caused by a wrongful act of the defendant, and (3) the defendant's act was done with an intent to make the witness unavailable. *Houlihan*, 92 F.3d at 1280; *see Giles*, 128 S.Ct. at 2682–83; *Doan*, 548 F.3d at 458. This test strikes an appropriate balance between protecting the integrity of the criminal process and dissuading defendants from tampering with witnesses, and the right of the defendant to cross-examine witnesses guaranteed by article I, section 12 of the Utah Constitution.

¶ 21 We also provide the district court some direction in applying the forfeiture doctrine. The U.S. Supreme Court has expressly left such application questions open. *Davis v. Washington*, 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ("We take no position on the standards necessary to demonstrate such forfeiture."); *see also* 21A Am.Jur.2d *Criminal Law* § 1095 (2008) (stating the Supreme Court "has declined to take a position on the standards necessary to demonstrate a forfeiture by wrongdoing"). The most significant questions are: (1) what burden of proof must the state meet to show a defendant has forfeited the right to confrontation through misconduct; and (2) what type of evidence may the district court consider in analyzing the defendant's wrongful conduct.

■ ¶ 22 As to the burden of proof, in all criminal prosecutions the state must prove the elements of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Utah Code Ann. § 76–1–501(1) (2008). The same standard does not apply to questions concerning the admissibility of evidence, however. *See State v. Brown*, 948 P.2d 337, 341 (Utah 1997)("Preliminary questions concerning the admissibility of evidence should be established by a preponderance of proof."). The majority of the courts addressing the forfeiture issue have applied a preponderance of the evidence standard. *See Davis*, 547 U.S. at 833, 126 S.Ct. 2266 (noting federal courts "have generally held the [g]overnment to the preponderance-of-the-evidence standard" in evaluating forfeiture); *Vasquez*, 173 P.3d at 1105 (noting that state and federal courts "have almost universally adopted a preponderance standard"); *Edwards*, 830 N.E.2d at 172 (noting the same). A minority of jurisdictions that have addressed the issue have held the preponderance-of-the-evidence standard is insufficient to protect the defendant's right to confrontation. These courts instead require the prosecution to demonstrate forfeiture by clear and convincing evidence. *See United States v. Thevis*, 665 F.2d 616, 631 (5th Cir.1982)(holding that the clear-and-convincing standard must be applied to forfeiture by wrongdoing "because confrontation rights are so integral to the accuracy of the fact-finding process"), *superseded by*

Fed.R.Evid. 804(b)(6) *as recognized in United States v. Zlatogur,* 271 F.3d 1025 (11th Cir.2001); *State v. Mason,* 160 Wash.2d 910, 162 P.3d 396, 404 (2007) (holding the substantial deprivation of constitutional protections demands that the prosecution to prove forfeiture by "clear, cogent, and convincing" evidence) *abrogated on other grounds by State v. Fallentine,* 149 Wash.App. 614, 215 P.3d 945 (2009); *People v. Geraci,* 85 N.Y.2d 359, 625 N.Y.S.2d 469, 649 N.E.2d 817, 821 (1995)(adopting the "clear and convincing" evidence standard as it is "most protective of the truth-seeking process").

¶ 23 The argument in favor of imposing a more rigorous standard of proof is founded on a theory that when constitutional rights are at issue "the stakes are simply too high to be left to a mere preponderance standard.... [T]he right of confrontation should not be easily deemed forfeited by an accused." *Mason,* 162 P.3d at 404–05. This argument has some force, particularly in light of this court's history of careful protection of constitutional rights. *See Wasatch County v. Okelberry,* 2008 UT 10, ¶ 9, 179 P.3d 768 (finding private property rights under the Utah and U.S. Constitutions require clear and convincing evidence of abandonment); *State v. Barzee,* 2007 UT 95, ¶ 29, 177 P.3d 48 (requiring the state to prove the four factors of a test to allow the forced medication of a criminal defendant by clear and convincing evidence); *State v. Lafferty,* 749 P.2d 1239, 1248 (Utah 1988) (stating the trial court has the " 'serious and weighty responsibility' " of ensuring a criminal defendant has waived his constitutionally guaranteed right to assistance of counsel (quoting *Westbrook v. Arizona,* 384 U.S. 150, 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966))); *Chess v. Smith,* 617 P.2d 341, 344 (Utah 1980) (cautioning trial courts in their analysis of a defendant's waiver of "fundamental, clear-cut rights"). However, we have not always applied heightened evidentiary standards simply because a constitutional protection is at stake. *See State v. Hansen,* 2002 UT 125, ¶ 56, 63 P.3d 650 (requiring prosecutors to show a criminal defendant voluntarily consented to a search, thereby waiving the Fourth Amendment protection, by a preponderance of the evidence). Bolstering the case for applying the lesser burden on the question of forfeiture is that preliminary evidentiary rulings in general are made on the basis of the preponderance-of-the-evidence standard. *Brown,* 948 P.2d at 341; *see also State v. Tarrats,* 2005 UT 50, ¶ 25, 122 P.3d 581 (requiring a defendant charged with rape who seeks to impeach his accuser through testimony that she had previously falsely reported a rape, to show the original allegation was false by a preponderance of the evidence).

¶ 24 On balance, we believe this court should adopt the majority view. Our general rule for evidentiary rulings is an important factor. Moreover, the prosecution must establish all three elements of the forfeiture test before the unavailable witness's out-of-court statements may be admitted. Two of these elements—the wrongful conduct and the defendant's subjective intent in engaging in the conduct—are particularly difficult to prove. An evidentiary hearing on this issue will be necessary in most cases, and a higher burden on the state would often result in an unnecessary mini-trial on forfeiture. Moreover, an increase in the standard to clear and convincing evidence could undermine the policy behind the forfeiture-by-wrongdoing doctrine by making the prosecution's burden so high that it can be met in only the most egregious cases of witness tampering or intimidation.

¶ 25 While preponderance of the evidence is the appropriate standard, this should not mean that a defendant's right to confrontation is easily forfeited. This is a constitutional guarantee and all Utah courts must recognize that this protection should not be summarily disposed of. This is a weighty matter as the defendant's guilt or innocence may largely hinge on this determination. That requires a case-specific and careful analysis of the specific acts of the defendant.

¶ 26 Finally, we note that the district court may not consider hearsay evidence in evaluating the admission of out-of-court statements on the basis of forfeiture by wrongdoing. Generally, the district court "is not bound by the rules of evidence except those with respect to privileges" when considering "[p]reliminary questions concerning ... the

admissibility of evidence." Utah R. Evid. 104(a). This rule is not absolute, and we may direct the district court to conduct its analysis within the confines of the Utah Rules of Evidence. *See State v. Ruscetta,* 742 P.2d 114, 117 (Utah Ct.App.1987); *State v. Ordonez–Villanueva,* 138 Or.App. 236, 908 P.2d 333, 338 n. 9 (1995)(" 'While the judge is not 'bound' by the Rules of Evidence, it was probably expected that the judges would apply them in most cases. The question then is not the existence of the power to disregard the Rules, but rather when that power should be exercised.' " (quoting Charles Alan Wright & Kenneth W. Graham, Jr., 21A *Federal Practice and Procedure,* § 5055 at 274 (1st ed.1977))); *Baldree v. State,* 248 S.W.3d 224, 233 (Tex.Ct.App.2007)("[T]he power to disregard the rules exists [when analyzing the admissibility of evidence], but nothing in the language of the rule compels the trial [court] to exercise that power."). This is one of those instances that demands that we disregard 104(a)'s general rule. The application of forfeiture by wrongdoing acts to abrogate a significant constitutional protection. We do not believe that it should be easily forfeited and thus we require the district courts of this state to apply the rules of evidence, including the rules controlling the admission of hearsay evidence, when they consider whether a criminal defendant has forfeited the right to confrontation.

¶ 27 Thus, under Utah law, the out-of-court statements of a witness may be admitted at a criminal defendant's trial when the witness is unavailable at trial due to the wrongful acts of the defendant, and the defendant's acts were intended to render the witness unavailable. The prosecution must demonstrate forfeiture by a preponderance of the evidence, but may only prove the allegations through evidence admissible under the Utah Rules of Evidence.

## II. C.P.'S AVAILABILITY TO TESTIFY AT MR. POOLE'S TRIAL CANNOT BE DETERMINED UNTIL THE TIME OF TRIAL

¶ 28 To reiterate, defendants forfeit their right to confront the witnesses against them only after the state has shown (1) the witness is unavailable at trial, (2) the witness's unavailability was caused by the defendant's wrongful acts, and (3) the defendant's wrongful acts were intended or designed to make the witness unavailable. Generally, courts applying this test will be required to analyze each element independently. Given our ultimate holding that a decision on C.P.'s availability at Mr. Poole's trial was premature prior to the time of trial itself, we do not need to analyze the latter two elements of the test.

¶ 29 Turning now to witness unavailability, forfeiture only applies when the state has shown that the witness, whose out-of-court statements are at issue, is unavailable at the defendant's criminal trial. Witness unavailability is an easy question to answer when the declarant is deceased because the witness can never be made available regardless of the efforts of the prosecution or the court. *Cf. United States v. Cherry,* 217 F.3d 811, 815–16 (10th Cir.2000) (not questioning witness availability in light of the declarant's murder); *United States v. Emery,* 186 F.3d 921, 925–26 (8th Cir.1999) (same); *United States v. Houlihan,* 92 F.3d 1271, 1279–80 (1st Cir.1996) (same). It is more difficult to evaluate the availability of a witness who has indicated unwillingness to testify prior to trial. Such a witness could conceivably have a change of heart and opt to testify despite earlier pronouncements to the contrary.

¶ 30 Indeed, any wrongful acts by the defendant are immaterial as far as the confrontation clause is concerned until it is shown that the witness is in fact unavailable at the criminal trial. The case law surrounding unavailability arising within the forfeiture doctrine, however, demonstrates that courts do not demand that a witness who refuses to testify be placed before the jury prior to an evaluation of the witness's availability. These cases hold that witness unavailability ought to be considered as part of the overall forfeiture analysis, which generally is done through an evidentiary hearing held outside the presence of the jury. *State v. Byrd,* 198 N.J. 319, 967 A.2d 285, 303 (2009); *See United States v. Aguiar,* 975 F.2d 45, 47 (2d Cir.1992); *Vasquez v. People,* 173 P.3d 1099, 1105 (Colo.2007); 21A Am.Jur.2d *Criminal*

*Law* § 1095 (2008). This model is appropriate in this context.[3] To hold otherwise would run contrary to the policy-based reasoning underlying the forfeiture doctrine; if the prosecution were to be required to present the witness at trial, the defendant could arguably benefit from the impression left with the jury by a victim or witness who refuses to answer the prosecutor's questions. Defendants should not be permitted to benefit in this way from their wrongful actions.

¶ 31 While we hold that a trial court may evaluate the witness's availability in an evidentiary hearing immediately prior to trial, the district courts must be conscious that the timing of the hearing is critical. If the hearing is held in the early pre-trial stages of the criminal prosecution, the court will be required to revisit the status of the witness at the time of trial to ensure the witness has remained unavailable. No re-evaluation of the witness's availability would be required when the evidentiary hearing is held in close temporal proximity of the trial or where the witness's unavailability cannot be altered.

¶ 32 In this case, it was appropriate for the district court to hold an evidentiary hearing on whether Mr. Poole forfeited his right to confront C.P. based on his wrongful acts. Ultimately, the district court found that C.P. was unwilling to testify at Mr. Poole's criminal trial, and was thereby unavailable at Mr. Poole's trial. At the time, C.P. had twice demonstrated an unwillingness to answer the state's questions after taking the witness stand, the last occurring on March 16, 2007. At the soonest, Mr. Poole's trial would have started more than five months after C.P. was last questioned. We find that this period of time is significant and precluded the district court from finding that C.P. was, in fact, unavailable at Mr. Poole's trial.[4] C.P. was obviously unavailable when the state attempted to take her testimony. But that is not enough to hold that she would definitively be unavailable by the time Mr. Poole went to trial.

## CONCLUSION

¶ 33 The district court concluded that the Utah Constitution recognized the availability of the doctrine of forfeiture by wrongdoing. The district court was correct; the Utah Constitution does not allow a defendant to benefit from misdeeds designed to render an adverse witness unavailable. Therefore, today we formally adopt the doctrine of forfeiture by wrongdoing under the Utah Constitution. To prove a defendant has forfeited the right to confront a witness, the state must prove that the witness is unavailable at trial through the wrongful acts of the defendant, and the defendant's acts were intended to render the witness unavailable. Additionally, the prosecution has the burden of proving forfeiture by a preponderance of the evidence and must make the showing with evidence

---

3. Some courts analyzing the confrontation clause have identified the concept of "constitutional unavailability" based on the Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). An analysis of availability under this legal concept is not merely an inquiry of the witness's physical whereabouts, willingness to testify, or privilege. The court must also look to the state's effort to present the witness at trial. *Id.; United States v. Tirado–Tirado*, 563 F.3d 117, 123 (5th Cir.2009). Indeed, a " 'witness is not 'unavailable' for purposes of ... the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial.' " *Roberts*, 448 U.S. at 74, 100 S.Ct. 2531 (quoting *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968))(emphasis and alteration in original); *see United States v. Ozsusamlar*, 349 Fed.Appx. 610, 612 (2d Cir.2009); *McCandless v. Vaughn*, 172 F.3d 255, 265 (3d Cir.1999).

Constitutional unavailability, however, is applied only in prosecutions where the state attempts to introduce a non-testifying witness's out-of-court statements through the doctrine of waiver. We have found no case applying the constitutional unavailability standard to the forfeiture by wrongdoing doctrine.

4. We are aware that the district court faces certain practicalities when preparing a case for trial. One of those considerations is each party's motion on what testimony will be admitted at trial under Utah laws and rules. It is appropriate to do so before trial and we do not wish that our ultimate holding in this appeal is converted into a weapon used by defense counsel to hinder the prosecution of criminal defendants. The protections provided in the Utah and U.S. Constitutions cannot be ignored. Here, the court must be able to find by a preponderance of the evidence that the witness was unavailable at trial. We cannot do that in this case.

properly admitted via the Utah Rules of Evidence.

¶ 34 And while we recognize the doctrine's existence under Utah law, we find that a decision five months in advance of trial on whether Mr. Poole forfeited his right to confront C.P. was premature. C.P.'s status as an unavailable witness at Mr. Poole's criminal trial cannot be determined until close to the time of trial. Our holding here should not be construed as requiring the prosecution to bring C.P. before a jury and attempt to question her. The district court may hold a preliminary evidentiary hearing on the issue. But that hearing must come within close temporal proximity to the defendant's trial. We do not define the outer limits of when this hearing must occur; we do, however, find that the time period that elapsed between C.P.'s last questioning and Mr. Poole's scheduled trial is too long. Given that fact, we cannot hold that C.P. was unavailable at Mr. Poole's trial.

¶ 35 Therefore, Mr. Poole has the option to withdraw his guilty pleas to three counts of rape of a child and proceed to trial on the eighteen counts, all of which are first degree felonies, originally charged against him.

¶ 36 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.